1    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLORADO
2

3    Civil Action No. 13-cv-01300-MSK-MJW

4    JOHN B. COOKE, SHERIFF OF WELD COUNTY, COLORADO, et al.,

5        Plaintiffs,

6    vs.

7    JOHN W. HICKENLOOPER, GOVERNOR OF THE STATE OF COLORADO,

8        Defendant.
     _____

9

     **REPORTER'S TRANSCRIPT**
10   MOTION FOR PRELIMINARY INJUNCTION

11   _____

12        Proceedings before the HONORABLE MARCIA S. KRIEGER,

13   Judge, United States District Court for the District of

14   Colorado, commencing at 9:05 a.m., on the 10th day of July,

15   2013, in Courtroom A901, United States Courthouse, Denver,

16   Colorado.

17

18

19

20

21

22

23        THERESE LINDBLOM, Official Reporter
          901 19th Street, Denver, Colorado 80294
24    Proceedings Reported by Mechanical Stenography
          Transcription Produced via Computer
25

1       **APPEARANCES**

2           DAVID BENJAMIN KOPEL, Attorney at Law, Independence

3   Institute, 13952 Denver West Parkway, #400, Golden, Colorado,

4   80401, appearing for the Sheriff Plaintiffs.

5           RICHARD A. WESTFALL, Attorney at Law, Hale Westfall,

6   LLP, 1445 Market Street, Suite 300, Denver, Colorado, 80202,

7   appearing for Colorado Outfitters Association, et al.

8           MARC F. COLIN, Attorney at Law, Bruno Colin & Lowe

9   P.C., 1999 Broadway, Suite 3100, Denver, Colorado, 80202,

10  appearing for the USA Liberty Arms, et al.

11          ANTHONY JOHN FABIAN, Attorney at Law, Anthony J.

12  Fabian, P.C., 510 Wilcox Street, #C, Castle Rock, CO 80104,

13  appearing for Colorado State Shooting Association.

14          DANIEL D. DOMENICO, Solicitor General, Colorado

15  Attorney General's Office, 1300 Broadway, Denver, Colorado,

16  80203, appearing for the Defendant.

17          JONATHAN P. FERO, Assistant Solicitor General,

18  Colorado Attorney General's Office, 1300 Broadway, Denver,

19  Colorado, 80203, appearing for the Defendant.

20          KATHLEEN SPALDING and MATTHEW D. GROVE, Assistant

21  Attorneys General, Colorado Attorney General's Office, 1300

22  Broadway, Denver, Colorado, 80203, appearing for the Defendant.

23          DAVID C. BLAKE, Deputy Attorney General, Colorado

24  Attorney General's Office, 1300 Broadway, Denver, Colorado,

25  80203, appearing for the Defendant.

1          **P R O C E E D I N G S**

2          *THE COURT:*  Court is convened today in Case No.

3    13-cv-1300, which is encaptioned in abbreviated form as Cooke

4    v. Hickenlooper.

5          Could I have entries of appearance, please.

6          *MR. WESTFALL:*  Good morning, Your Honor.  Richard

7    Westfall of Hale Westfall appearing today on behalf of a group

8    of the plaintiffs.

9          *THE COURT:*  Good morning and welcome.

10         *MR. KOPEL:*  Good morning, Your Honor.  David Kopel on

11   behalf of 55 sheriffs and David Strumillo.

12         *THE COURT:*  Good morning and welcome.

13         *MR. FABIAN:*  Good morning, Your Honor.  Anthony Fabian

14   on behalf of Colorado State Shooting Association and Hamilton

15   Family Enterprises.

16         *THE COURT:*  Good morning and welcome.

17         *MR. COLIN:*  Good morning, Your Honor.  Marc Colin on

18   behalf of the nine federally licensed firearms dealer

19   plaintiffs.

20         *THE COURT:*  Good morning, welcome.

21         *MR. DOMENICO:*  Good morning, Your Honor.  Dan

22   Domenico, Solicitor General, appearing on behalf of Governor

23   Hickenlooper.  I'm joined by Assistant Attorney General Kit

24   Spalding, Deputy Attorney General David Blake, Assistant

25   Attorney General Matt Grove, and Assistant Solicitor General

 1  John Fero, all representing the Governor.

 2          *THE COURT:*  Good morning and welcome.

 3          This morning's hearing was set down to address a

 4  motion for preliminary injunction, that motion having been

 5  filed at Docket No. --

 6          Ms. Glover, can you help me?  I'm looking.

 7          *COURTROOM DEPUTY:*  I think it's No. 29.

 8          *THE COURT:*  I think so too.  Docket No. 29.

 9          Last evening at about 9:30, the parties filed a

10  proposed stipulated preliminary injunction found at Docket No.

11  56-1.

12          I've had an opportunity to review the stipulated

13  preliminary injunction.  And while it reflects that the parties

14  have resolved their dispute for purposes of interpretation of

15  two portions of one of the statutes that is at issue in this

16  case, I do not believe this court can enter a preliminary

17  injunction as requested.

18          That is for several reasons.  First of all, I've had

19  the opportunity to study the briefing that has been submitted.

20  And in doing so, I reviewed a number of applicable cases, some

21  cited by the parties, some that I've reviewed upon my own

22  research.  A number of these pertain to standing.  And while

23  the parties here agree that some plaintiff has standing for

24  purposes of the case, a separate standing requirement is

25  applicable for a request for prospective injunctive relief with

1   regard to a penal statute.

2          I do not have the factual showing in order to find

3   standing of any plaintiff for purposes of that relief.  And as

4   a consequence, I cannot determine that there is a case or

5   controversy that falls within the jurisdiction of this Article

6   III court.  That does not mean that there is not a party that

7   has standing for purposes of the lawsuit as a whole, only as to

8   the motion for preliminary injunction.

9          The second problem that I run into is that paragraph 3

10   of the proposed stipulated preliminary injunction reflects the

11   parties' agreement that the technical guidance memorandum

12   prepared for and at the direction of the Governor by the

13   Attorney General is the official written interpretation of the

14   applicable statute and that it is binding and has the force of

15   law.  That being the case, there is nothing for this court to

16   enjoin.

17          Finally, looking at paragraph 4 of the stipulation,

18   the terms of the stipulation provide that "the Court hereby

19   issues a preliminary injunction binding the Governor and any of

20   his officers, agents, servants, employees, attorneys as

21   follows."

22          To the extent that the subparagraphs reflect the terms

23   of the technical guidance, it's already the law of the state,

24   and there is nothing for me to enjoin.  To the extent that it

25   deviates from the technical guidance, I understand the

1    agreement between the parties to be that the Governor will

2    direct amendment of the technical guidance in accordance with

3    the parties' agreement.

4         That takes me to the question of counsel as to whether

5    you would prefer me to deny the motion for preliminary

6    injunction or whether you would prefer to withdraw it, there

7    being no pending dispute between the parties as originally

8    styled in Docket No. 29.

9         What is your pleasure?

10        MR. WESTFALL:  Your Honor, as of yesterday, we were

11   prepared to put on our full case.  We had our witnesses

12   prepared and ready to go.  We had extensive negotiations.  It

13   went well into the evening last night --

14        THE COURT:  I gather.

15        MR. WESTFALL:  -- that reached the stipulation we

16   presented to the Court.  If I understood the Court's questions

17   correctly, the choices are -- neither one very good from the

18   plaintiffs' perspective -- either withdrawing or having our

19   motion denied.  I would respectfully request, if I think I

20   understand where the Court is coming from, to allow us to do

21   further briefing and submit affidavits.  And we would be happy

22   to do so in very prompt short order.

23        THE COURT:  Well, I don't understand why that would be

24   necessary.  You've reached an agreement.

25        MR. WESTFALL:  Because the technical guidance --

 1   because there are two specific paragraphs within the proposed

 2   injunction that has been presented to this court that we

 3   believe fill the gap.  We were prepared yesterday to present to

 4   the Court that there was still a delta between the technical

 5   guidance and what we believed to be proper injunctive relief to

 6   protect our clients.

 7            THE COURT:  Right.  How the statute would be enforced.

 8   And I understand the Governor is now agreeing as to how the

 9   statute will be enforced.

10            MR. WESTFALL:  It would have to be enforced, based

11   upon the plaintiffs' perspective, based upon this court

12   entering the injunction.

13            THE COURT:  Well, let's walk down that path for just a

14   minute.

15            Let's assume that I entered this proposed injunction.

16   Let's assume I had jurisdiction to do it because there was

17   someone who had standing to request this particular kind of

18   relief, and let's assume it's issued.

19            How do you see this court enforcing the injunction?

20            MR. WESTFALL:  The Governor is appearing -- and that's

21   why I believe that there is the prefatory language that is in

22   the earlier part of the proposed stipulation.  The Governor is

23   appearing not just as the Governor and as the chief executive,

24   but represents the embodiment of the state.  We have case law

25   on that that we've already previously presented to this court.

1           As a result of that, the Court is declaring that the

2   statute, House Bill 1224, as interpreted in the negotiated

3   language that we agreed to last night, must be construed in the

4   following manner.  That, we believe from plaintiffs'

5   perspective, gets us to where we need to be.  And that if in

6   fact any local jurisdiction -- I mean, certainly, it's binding

7   on all state agencies, there is no question about that, the

8   state patrol.

9           With respect to local jurisdictions -- we've done a

10  lot of thinking and chewing on that.  And we believe to keep

11  this case streamlined and simple, that that binding

12  interpretation by the Governor in a stipulated fashion, as an

13  order entered by this court, would be the interpretation that

14  every -- even though the technical guidance originally said

15  it's not binding, that that non-binding quality becomes binding

16  once this Court exercises its jurisdiction and enters the

17  injunctive relief.

18          THE COURT:  What jurisdiction does this court have

19  over local jurisdictions if they're not already bound by the

20  Governor?

21          MR. WESTFALL:  This court -- the jurisdiction would

22  naturally flow through, we believe, to the local jurisdiction.

23          THE COURT:  Right.  So if the Governor says, this is

24  how it's going to be enforced, what does an injunction by this

25  court add to that?

1        MR. WESTFALL:  If this court doesn't enter the

2   injunction, then the critical language that we agreed to last

3   night will not have force of law.

4        THE COURT:  Well, I understand the Governor to have

5   agreed to that language, and that means that the Governor is

6   going to direct enforcement in accordance with these terms.

7        MR. WESTFALL:  If the Court's -- I'm trying to

8   understand the Court's concern.  If the Court's concern is that

9   the Court still does not have a proper proffer on the basis to

10  say that injunctive relief is appropriate to fill this gap

11  between what the Governor has agreed to and what we've

12  negotiated last night, we would be happy to submit additional

13  proffer to this court.

14       THE COURT:  That's not the problem.  We've got two

15  problems.  One is standing, which you haven't yet addressed.  I

16  still do not have a person who falls within the definition of a

17  person with standing for prospective relief to enjoin

18  pre-enforcement of a penal statute, number one.  Without that,

19  I can't enter a preliminary injunction, even on the agreement

20  of the parties, because you can't consent to jurisdiction.

21       Secondly, this particular injunction simply says that

22  the Governor has agreed that, one, the technical guidance has

23  the force and effect of law, and, two, that the additional

24  provisions that you put in here are going to be the guidance

25  for enforcement.  So why do you need the Court to enter an

1    injunction?  If that's what the Governor is saying, and that is

2    what the Governor is going to direct law enforcement officers

3    to do, why do you need an injunction?

4         *MR. WESTFALL:*  See if I can collect my thoughts on the

5    second point by answering the first point first.  And maybe my

6    co-counsel can help me out here.

7         With respect to standing, two of the people that we

8    were to have testify today, David Bayne and Elisa Dahlberg,

9    would have clearly individual standing on both issues presented

10   on the preliminary injunction, both the design to be readily

11   converted language and the continuous possession issue.  And

12   I'd be prepared to make a proffer to the Court today or submit

13   a supplemental briefing to show that those two people alone,

14   who were prepared to testify today, have standing for the Court

15   to issue the injunctive relief that is being requested.

16        With respect to the second point, we already have had

17   an issue in discussion, wanting to make sure that the

18   Governor's power is the embodiment of the state in defending

19   against our motion for preliminary injunction and our request

20   for injunctive relief.  The Governor is saying, yes, this is

21   the proper interpretation.  But to have that in fact binding,

22   which is to be done in a manner to protect the Second Amendment

23   rights of our plaintiffs and the Fourteenth Amendment rights of

24   our plaintiffs, that believe that injunctive relief should be

25   entered to ensure, so that the power of this federal court

1    premised upon the Second Amendment and the Fourteenth Amendment

2    of the Constitution is saying, these provisions must be

3    interpreted in the manner in which we agreed to last night.

4          And I think that's a lot more legal and enforceable

5    than simply the Governor's representation.

6          And co-counsel, Mr. Kopel, would obviously like to

7    address the Court as well.

8          *THE COURT:*  I see.

9          *MR. KOPEL:*  Thank you, Your Honor.  I think the

10   difference between the technical guidance being amended to

11   reflect last night's agreement and an injunction from this

12   court -- if a person were prosecuted in Denver, arrested by the

13   Denver Police Department and then prosecuted by the Denver

14   District Attorney's Office, the function of the technical

15   guidance under Colorado state law is that that defendant would

16   have an affirmative defense of mistake of law.  That is the

17   legal effect under the Colorado Revised Statutes of the

18   technical guidance.

19         In contrast, we believe that an injunction from this

20   court by enjoining the Governor himself, as Mr. Westfall has

21   said, as the embodiment of the state law in this case, would

22   have necessarily a binding effect on the application of that

23   law, directly on all law enforcement within the state of

24   Colorado.

25         *THE COURT:*  Well, let's walk through the practical

 1   effect.  Let's use that hypothetical.

 2          Someone is arrested in a jurisdiction.  And the arrest

 3   is not the significant point; it is the prosecution of a

 4   violation of this law that becomes the operative issue.  So the

 5   district attorney in the appropriate -- or county attorney in

 6   the appropriate location brings charges under the statute.  The

 7   Governor has issued a technical guidance memorandum consistent

 8   with these terms, or agrees that it should be interpreted

 9   consistent with the terms you've just given me.  Why do you

10   need an injunction?  How does an injunction in this case help

11   that person who has been arrested, who is being prosecuted?

12          *MR. KOPEL:*  Because in that case, Your Honor, without

13   the injunction, the district attorney is free to say, well,

14   yes, when this case goes forward, the person -- the defendant

15   can raise the issue of mistake of law so he will maybe get off

16   in this case, but I, the district attorney, say that the

17   technical guidance is incorrect and is not the correct

18   interpretation of the law, although I recognize that immunizes

19   in this particular case.  But going forward, the district

20   attorney could argue that the technical guidance is wrong, and,

21   for example, magazines with removable base plates are in fact

22   banned.

23          *THE COURT:*  Sounds like you don't trust the Governor.

24          *MR. KOPEL:*  We believe that the district attorney in

25   this hypothetical is bound by an injunction and may not deviate

1  from that to even initiate the prosecution in the first place,

2  as opposed to having the option of initiating a prosecution and

3  then the defendant raises the issue of mistake of law.

4  Because, of course, mistake of law is a mistake.  It's saying,

5  I was wrong about the law.

6          THE COURT:  Mr. Kopel, the DA is not a party here in

7  this lawsuit; and I'm not able to do anything about that

8  prosecution even if an injunction is issued.  So there really

9  is no difference in an injunction being issued in this case and

10 relying on the agreement of Governor Hickenlooper in accordance

11 with the stipulation that you've entered.

12          MR. KOPEL:  Your Honor, if I could ask one -- on

13 standing, would I be correct in presuming that your view on the

14 criminal standing, standing in general for all parties in this

15 preliminary injunction, is based on following the -- in

16 accordance with the D.C. Circuit's interpretation of standing?

17          THE COURT:  I'm guided by Tenth Circuit law.

18          MR. KOPEL:  Okay.

19          THE COURT:  And Tenth Circuit law includes a number of

20 cases which you've not addressed in your briefing.  For

21 instance, *Diaz v. The City and County of Denver*, at 567 F.3d

22 1169, a Tenth Circuit 2009 case.

23          MR. KOPEL:  Thank you very much, Your Honor.

24          THE COURT:  All right.  Let me hear from the Solicitor

25 General.

1        MR. DOMENICO:  Yes, Your Honor.

2        Our view on standing, I believe, was that there was a

3    live case or controversy because the plaintiffs had alleged,

4    including for purposes of the injunction, that they were

5    engaging or were going to engage in conduct that under their

6    interpretation of the statute -- or at least under one

7    interpretation of the statute, their view was, they would be

8    subject to prosecution.  We, I think, viewed that as adequate

9    to provide the Court with jurisdiction.

10        THE COURT:  For purposes of the case or purposes of

11   being --

12        MR. DOMENICO:  For purposes of prospective -- both --

13   I mean, the entire case, I believe, is prospective injunctive

14   relief, whether it's preliminary or permanent injunctive

15   relief, seeking to invalidate the statute, declare the statute

16   unconstitutional.

17        The second question I think is, we've been willing

18   to -- we have suggested previously that the guidance is as

19   binding on us as anything else is going to be --

20        THE COURT:  Are there differences between the guidance

21   and what is contained in the subparagraphs of paragraph 4 in

22   this --

23        MR. DOMENICO:  Our view is that they are consistent

24   with one another.  I think you might view it as, the new

25   paragraph sort of maybe put meat on the bones of the original

 1   guidance.  We don't view them as inconsistent at all.  Our view

 2   is that they're perfectly consistent with what the guidance was

 3   saying.  But they do add, I think, some substance to it that

 4   has been important to the plaintiffs.

 5          THE COURT:  And is the Governor prepared or -- to

 6   amend or extend the technical guidance to incorporate this

 7   clarification?

 8          MR. DOMENICO:  I'm not sure we have had the actual

 9   discussion with the Governor, with our client, about that; but

10   I don't see why we would not be.

11          THE COURT:  Seems to me, if you have authority to

12   enter into this, you have authority to commit that the Governor

13   would stand behind this.

14          MR. DOMENICO:  I would think we would do that.

15          THE COURT:  All right.

16          Now, tell me how you think an injunction is necessary

17   in light of the agreement that the technical guidance will be

18   enforced in accordance with what you've written down.

19          MR. DOMENICO:  Well, we only represent the Governor.

20   We can't -- we can't speak for DAs or police officers.  And so

21   our position -- we did read the ACLU v. Johnson case that the

22   plaintiff cited for the proposition that an injunction, even

23   against the Governor, would be effectively binding as if --

24   that's a Tenth Circuit case.

25          THE COURT:  Uh-huh.

1    MR. DOMENICO:  Would effectively be the same as if the

2    DAs themselves were here.  So under that case, it seems that

3    there may be some additional comfort that the plaintiffs would

4    have from an injunction as opposed to simply the guidance.

5        As far as the state and the law enforcement apparatus

6    of the state that we represent, I think we are in the same

7    position.  We intend for them to be bound by the guidance.  I

8    mean, the -- there is perhaps a difference between an

9    affirmative defense and being able to come in and ask you to

10   hold someone in contempt --

11   THE COURT:  Who would I be holding in contempt?

12   MR. DOMENICO:  Well, we don't intend to do anything

13   contrary to the guidance, so it would I hope not be any state

14   law enforcement officers.  And, again, I don't represent DAs or

15   police departments.

16   THE COURT:  I understand you don't represent them.

17   But I don't have any more authority over them than the Governor

18   has over them.

19   MR. DOMENICO:  I agree with that.

20   THE COURT:  Okay.

21   Anything else you want me to know?

22   MR. DOMENICO:  No, ma'am.

23   THE COURT:  Thank you.

24   Anything else anybody else wants me to know?

25   MR. COLIN:  If I may, Your Honor.

1          THE COURT:  Sure.  Would you go to the lectern.

2          MR. COLIN:  I will.

3          Your Honor, I suspect that the licensed firearms

4     dealers have, perhaps, the most obvious prospective standing in

5     these issues.  There are -- they're in the awkward position, a

6     Hobson's choice, if you will, of being placed in a circumstance

7     where there is uncertainty regarding a particular statute, and

8     their choice is to either risk criminal prosecution by selling

9     items that they are prohibited from selling or losing their

10    businesses because they stopped selling items because of the

11    uncertainty of the statute.  And so that was one of the areas

12    in which we were prepared to establish standing, had we

13    proceeded today.

14         I would ask if we could have, perhaps, a short recess

15    so that counsel can confer as to the appropriate response to

16    the Court's question.

17         THE COURT:  I'm happy to take a recess if you'd like

18    to confer, and I'm happy to reconvene and take a proffer as to

19    standing.  I don't think that's going to resolve what is before

20    me today, but I'm happy to do that if you'd like.

21         MR. COLIN:  Okay.

22         THE COURT:  It's 9:30 right now, 9:31, according to

23    the court clock.  How long would you like for a recess?

24         MR. COLIN:  15 minutes?

25         THE COURT:  All right.  We'll stand in recess for 15

```
 1    minutes.

 2               (Recess from 9:31 a.m. to 9:52 a.m.)

 3               THE COURT:  Counsel.

 4               MR. WESTFALL:  Your Honor.

 5               We have talked among ourselves, and we hope we have a

 6    proper resolution that would hopefully be consistent with the

 7    Court's concerns.

 8               The Attorney General has agreed to redraft the

 9    technical guidance along the lines with the agreement that we

10    had reached last night.  When we have that in hand, we will

11    jointly file a motion to withdraw the motion for preliminary

12    injunction.

13               THE COURT:  I think, actually, the motion that you

14    filed was entitled that, motion to withdraw the motion for

15    preliminary injunction.  Do you just want me to grant that?

16               MR. WESTFALL:  We would want -- we would like to

17    withdraw that motion and refile a slightly modified motion to

18    withdraw, if that would be acceptable to the Court.

19               THE COURT:  Sure.

20               Okay.  So your current motion is Docket No. 56.  It's

21    a request for withdrawal of the plaintiffs' motion for

22    preliminary injunction and a stipulated motion for preliminary

23    injunction.  Do you want to withdraw that, right?

24               MR. WESTFALL:  Yes, Your Honor.

25               THE COURT:  Okay.  Is the Governor in agreement with
```

1  that?

2       *MR. DOMENICO:* Yes, Your Honor.

3       *THE COURT:* All right. And it sounds like what you

4  are going to be doing then is filing a motion requesting what?

5       *MR. WESTFALL:* We would be merely asking for a motion

6  for the Court to grant the motion, the revised motion that we

7  intend to file.

8       *THE COURT:* What's that motion going to request?

9       *MR. WESTFALL:* The motion is merely going to say,

10  based upon the revised technical guidance that -- with the

11  terms that have been modified by the -- by the agreement of the

12  parties that will be attached to our revised motion to

13  withdraw, we will merely ask that the Court grant that motion

14  to withdraw.

15       *THE COURT:* Okay. I understand.

16       I think based on that, we can vacate the hearing today

17  on Docket No. 29, which is the motion for preliminary

18  injunction, and Docket 56 is withdrawn.

19       There will be no hearing on the motion for preliminary

20  injunction, the parties having resolved that matter by

21  settlement and based upon their representation that the

22  technical guidance memorandum, one, will govern enforcement of

23  the statute, and, two, will be amended to cover the terms that

24  the parties have agreed to.

25       *MR. WESTFALL:* Yes.

1        THE COURT:  Anything further?

2        MR. COLIN:  No, Your Honor.

3        MR. KOPEL:  No, Your Honor.

4        MR. DOMENICO:  No, Your Honor.

5        THE COURT:  Thank you.  Then that will conclude this

6    matter, and we'll stand in recess.

7        (Recess at 9:55 a.m.)

8                    REPORTER'S CERTIFICATE

9

10        I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

11

12        Dated at Denver, Colorado, this 12th day of July, 2013.

13                              s/Therese Lindblom

14                    _____

15                    Therese Lindblom,CSR,RMR,CRR

16

17

18

19

20

21

22

23

24

25

```
 1              THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
     Civil Action No. 13-CV-1300-MSK-MJW
 3
     COLORADO OUTFITTERS ASSOCIATION,
 4   COLORADO FARM BUREAU,
     NATIONAL SHOOTING SPORTS FOUNDATION,
 5   MAGPUL INDUSTRIES,
     COLORADO YOUTH OUTDOORS,
 6   USA LIBERTY ARMS,
     OUTDOOR BUDDIES, INC.,
 7   WOMEN FOR CONCEALED CARRY,
     COLORADO STATE SHOOTING ASSOCIATION,
 8   HAMILTON FAMILY ENTERPRISES, INC.,
     d/b/a FAMILY SHOOTING CENTER AT CHERRY CREEK STATE PARK
 9   DAVID STRUMILLO,
     DAVID BAYNE,
10   DYLAN HARRELL,
     ROCKY MOUNTAIN SHOOTERS SUPPLY,
11   2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC,
     BURRUD ARMS INC. D/B/A JENSEN ARMS,
12   GREEN MOUNTAIN GUNS,
     JERRY'S OUTDOOR SPORTS,
13   SPECIALTY SPORTS & SUPPLY,
     GOODS FOR THE WOODS,
14   JOHN B. COOKE,
     KEN PUTNAM,
15   JAMES FAULL,
     LARRY KUNTZ,
16   FRED JOBE,
     DONALD KRUEGER,
17   STAN HILKEY,
     DAVE STONG,
18   PETER GONZALEZ,
     SUE KURTZ,
19   DOUGLAS N. DARR,

20        Plaintiffs,

21   vs.

22   JOHN W. HICKENLOOPER, GOVERNOR OF THE STATE OF COLORADO,

23        Defendant.
     _____
24
                        REPORTER'S TRANSCRIPT
25                    LAW AND MOTION HEARING
     _____
```

1    Proceedings before the HONORABLE MARCIA S. KRIEGER,

2  Judge, United States District Court for the District of

3  Colorado, commencing at 3:06 p.m., on the 19th day of December,

4  2013, in Courtroom A901, United States Courthouse, Denver,

5  Colorado.

6

7                          **APPEARANCES**

8         PETER J. KRUMHOLZ, Attorney at Law, Hale Westfall,
   LLP, 1600 Stout Street, Suite 500, Denver, Colorado, 80202,
9  appearing for the Plaintiffs.

10        DOUGLAS ABBOTT, Attorney at Law, Holland & Hart, LLP,
   555 17th Street, Suite 3200, Denver, Colorado, 80202, appearing
11 for the Plaintiffs.

12        JONATHON MICHAEL WATSON, Attorney at Law, Sherman &
   Howard, 633 17th Street, Suite 3000, Denver, Colorado, 80202,
13 appearing for the Plaintiffs.

14        ANTHONY JOHN FABIAN, Attorney at Law, 510 Wilcox
   Street, Castle Rock, Colorado, 80104, appearing for the
15 Plaintiffs.

16        DAVID BENJAMIN KOPEL, Attorney at Law, Independence
   Institute, 727 East 16th Avenue, Denver, Colorado, 80203,
17 appearing for the Plaintiffs.

18        MATTHEW DAVID GROVE, MOLLY ALLEN MOATS, JOHN TIEN YAU
   LEE, KATHLEEN L. SPALDING, and STEPHANIE LINDQUIST SCOVILLE,
19 Assistant Attorneys General, Colorado Attorney General's
   Office, Ralph L. Carr Colorado Judicial Center, 1300 Broadway,
20 Denver, Colorado, 80203, appearing for the Defendant.

21

22

23

24            THERESE LINDBLOM, Official Reporter
            901 19th Street, Denver, Colorado 80294
25       Proceedings Reported by Mechanical Stenography
            Transcription Produced via Computer

1           **P R O C E E D I N G S**

2           *THE COURT:*  Court is convened today in Case No.

3    13-cv-1300.  This is encaptioned, Colorado Outfitters

4    Association, et al. v. John W. Hickenlooper.

5           Could I have entries of appearance, please.

6           *MR. KRUMHOLZ:*  Good afternoon, Your Honor.  Peter

7    Krumholz on behalf of David Bayne, Dylan Harrell, Colorado Farm

8    Bureau, Colorado Outfitters Association, Colorado Youth

9    Outdoors, Outdoor Buddies, Inc., and Women for Concealed Carry.

10           *THE COURT:*  Good afternoon.  Welcome.

11           *MR. KOPEL:*  Good afternoon, Your Honor.  David Kopel

12    on behalf of David Strumillo and 55 individual law enforcement

13    officers in their personal capacities, who happen to be

14    sheriffs.

15           *THE COURT:*  Good afternoon and welcome.

16           *MR. KOPEL:*  Thank you.

17           *MR. WATSON:*  Good afternoon, Judge.  Jonathon Watson

18    on behalf of the federally licensed firearms dealers.

19           *THE COURT:*  Good afternoon and welcome.

20           *MR. ABBOTT:*  Doug Abbott on behalf of Magpul and the

21    National Shooting Sports Foundation.

22           *THE COURT:*  Good afternoon and welcome.

23           *MR. FABIAN:*  Good, Your Honor.  Anthony Fabian on

24    behalf of Colorado State Shooting Association and Hamilton

25    Family Enterprises.

```
 1          THE COURT:  Good afternoon and welcome.

 2          MR. GROVE:  Matthew Grove, Your Honor.  With me at

 3    counsel table are Molly Moats, John Lee, Kathleen Spalding,

 4    Stephanie Scoville on behalf of the Governor.

 5          THE COURT:  Good afternoon and welcome.

 6          I set this matter down on the law and motion calendar

 7    at the time that Docket No. 97, motion for extension of time to

 8    file dispositive motions, was filed; and there has been a lot

 9    of activity since the filing of that particular motion.  In

10    particular, there has been filed a motion for joinder and for

11    leave to file a Third Amended Complaint, briefing with regard

12    to that in response, briefing in reply.  And the reply suggests

13    that the plaintiffs -- actually, that the clients of Mr. Kopel

14    seek to join and that -- I guess all the plaintiffs seek to

15    amend the Complaint with yet another version of an Amended

16    Complaint, what I would call a Fourth Amended Complaint.

17          Do I correctly understand where we are as far as

18    posture on that particular motion?

19          MR. KOPEL:  Well -- Your Honor, the motion for joinder

20    and then the filing of exhibits, a proposed Third Amended

21    Complaint, and then of yesterday, replacing that with the

22    Fourth Amended Complaint was filed by me on behalf of my

23    clients.  We have -- that is our filing.  And the other parties

24    in the case may wish to state their own positions on that, but

25    that was a filing by me on behalf of my clients.
```

```
 1            THE COURT:  All right.  Raises an interesting
 2    procedural question.
 3            MR. KOPEL:  It does, Your Honor.
 4            THE COURT:  Ordinarily, when there is a circumstance
 5    such as this, a motion for joinder is not the preferred
 6    mechanism.  It is a motion to intervene.  But here, it doesn't
 7    make any difference whether it's a motion to intervene or a
 8    motion to join.  I understand that your clients wish to
 9    participate in this litigation to assert individual claims and
10    that you would like to be able to have those claims reflected
11    in a form of Complaint which is and has been tendered as the
12    Fourth Amended Complaint.
13            Is that correct?
14            MR. KOPEL:  Exactly, Your Honor.
15            THE COURT:  All right.  Thank you.
16            Then let me hear from those parties who wish to
17    address that motion.  The reply, essentially, becomes a new
18    motion.  I've not heard from the defendants with regard to
19    that -- I should say the defendant.
20            MR. GROVE:  One defendant, many attorneys.
21            THE COURT:  That's it.  You had me confused.
22            MR. GROVE:  Matthew Grove, Your Honor, on behalf of
23    the Governor.
24            Mr. Kopel and I have had a couple of discussions over
25    the last couple of days, and that's what resulted in his filing
```

1    what has been now been termed the Fourth Amended Complaint.

2    Many of the arguments that we've raised in our response to the

3    proposed Third Amended Complaint, which is Docket No. 112, is

4    our response, apply to the Fourth Amended Complaint as well.

5         There are some additional concerns that I'd like to

6    raise.  Let me just start off by saying, the Governor opposes,

7    as we did the Third Amended Complaint, the acceptance of the

8    Fourth Amended Complaint and the sheriffs' motion for joinder

9    and to amend the Fourth Amended Complaint.

10        There are a number of reasons for this.  The primary

11   one is that we don't believe that under Rule 16 the plaintiffs

12   have shown good cause to amend.  And under Rule 15, which is

13   the second step of the analysis, we don't believe that -- well,

14   we believe that an amendment at this point would be futile,

15   particularly with respect to House Bill 1224, which is the

16   large-capacity magazine restriction.

17        There are questions in addition with respect to 1229,

18   which is the universal background check provision, as to

19   whether the plaintiffs' Complaint, Fourth Amended Complaint,

20   states adequate allegations in order to nudge it across the

21   line from plausible under the *Twombly* and *Iqbal* test.  And so

22   that's something that -- again, this has all moved very

23   quickly, as Your Honor knows, that we're still processing.  But

24   at this point, that's our position.  Most of it is laid out in

25   the response to the proposed Third Amended Complaint.

```
 1           THE COURT:  Anything else you'd like me to consider?

 2           MR. GROVE:  Not with respect to our opposition.  If

 3   the Court has -- there are some other issues that I think we

 4   should probably discuss today, but we can move on from that.

 5           THE COURT:  I'm just concerned with this motion at

 6   this juncture.

 7           MR. GROVE:  Nothing else with respect to this motion.

 8           THE COURT:  All right.  Thank you.

 9           Any of the other plaintiffs want to address this?

10           MR. KRUMHOLZ:  Your Honor, on behalf of David --

11           THE COURT:  Would you go to the lectern, please.

12           MR. KRUMHOLZ:  Thank you, Judge.

13           With respect to David Bayne, Dylan Harrell, and the

14   nonprofit plaintiffs, we do not oppose Mr. Kopel's motion.

15           THE COURT:  Thank you.

16           MR. FABIAN:  Neither is there an objection from

17   Colorado State Shooting Association or family -- Hamilton

18   Family Enterprises.

19           THE COURT:  Thank you.

20           MR. ABBOTT:  Plaintiff Magpul does not object to the

21   motion.  Plaintiff Shooting Sports Foundation takes no

22   position.

23           THE COURT:  Thank you.

24           MR. WATSON:  The plaintiff federally licensed firearms

25   dealers take no position on the motion either.
```

 1          *THE COURT:*  Thank you.

 2          Is there any further argument you'd like to make,

 3    Mr. Kopel, on behalf of your clients?

 4          *MR. KOPEL:*  Yes, Your Honor.

 5          Your Honor, granting the Fourth Amended Complaint

 6    would promote judicial economy in two important ways.  First of

 7    all, it would prevent the -- would obviate the need for the

 8    filing of an entirely new Complaint by these 55 individuals,

 9    which would, of course, result in another case and a whole

10    other situation starting up.  Having their concerns resolved in

11    this single case, in which they have been participating for

12    over half a year, would, therefore, be substantially

13    instructive to judicial economy.

14          The Fourth Amended Complaint would also move this

15    particular case forward.  The claims that are brought forward

16    in the Fourth Amended Complaint are the same kind of individual

17    rights of individual firearms owners that have been at issue in

18    this case all along and on which extensive discovery and

19    briefing has taken place.

20          As was stated in the December 11 initial motion for

21    leave to file the Amended Complaint, there will be no new

22    witnesses in this case.  The six sheriffs who were proposed as

23    witnesses were deposed extensively already.  They were deposed

24    quite extensively, not only about their official capacity

25    issues, but also about their individual capacity issues, based

1    on the understanding that the lawyers on both sides had at the

2    time.  So as Exhibit A shows, they have been asked all about

3    their particular individual firearms they personally own,

4    particular magazines they personally own, how much they go

5    hunting, how far they go target shooting.  Really, the full

6    scope of their individual gun ownership was up for deposition

7    and has been deposed.  Accordingly, no new discovery is

8    necessary in this case.

9         We -- in the Fourth Amended Complaint, pleaded as

10   concisely as possible to address all of defendant's express

11   concerns about the Third Amended Complaint raising new issues,

12   we don't believe that that Third Amended Complaint raised

13   anything new.  As the citations in the Complaint itself to the

14   discovery showed, these are all issues that have already been

15   on the table.  But we certainly don't need the third -- we

16   don't need any new complaint to continue to bring those issues

17   forward.  Those are well established by the Second Amended

18   Complaint back of July 1.

19        The Governor's response filed yesterday said that he

20   would support a simple amendment which simply brought the

21   sheriffs into the case as ordinary individuals with individual

22   rights.  We have done everything that was asked by him to do

23   so, to take out everything he objected to in the Third Amended

24   Complaint and radically reduce the content for what is left in

25   the Fourth Amended Complaint.  We've done that conscientiously,

1   in the spirit of expedition and cooperation.  And we believe

2   that the Governor's offer in his filing yesterday, that a

3   simple amendment would be supported should be accepted by this

4   court.

5          THE COURT:  Thank you.

6          MR. KOPEL:  Thank you, Your Honor.

7          THE COURT:  Docket No. 104, the motion for joinder and

8   leave to file an Amended Complaint, has by its -- by the

9   briefing become a motion for joinder and leave to file a Fourth

10  Amended Complaint.

11         Let me start with an observation that evolution of the

12  parties' positions during the course of briefing is not the

13  best way to frame up an issue for determination.  Our local

14  rule requiring conference between the parties expects and

15  anticipates that all of the conversation between the parties

16  will occur before any pleading is filed, and that way it is

17  clear what the issues are to be addressed at the time of the

18  hearing or ruling on the motion.

19         So I urge you, counsel, in the future, please do not

20  attempt to satisfy your Rule 7.1 required disclosure by simply

21  saying, we talked to the other side.  Complete your

22  conversation.  Review the other parties' pleadings so that

23  there is a clear framework for what will be determined here in

24  the courtroom.

25         As to the amended motion, I grant it in part, and I

 1 | deny it in part.

 2 |         I recognize that from the plaintiffs' perspective,

 3 | there is value to having many people who hold important

 4 | positions of public office being named as plaintiffs in this

 5 | case.  It attracts attention to their claims, and it helps

 6 | shape the public debate.  But from a legal perspective, those

 7 | things are irrelevant.  The symbolic figure of Lady Justice

 8 | wears a blindfold to avoid consideration of who the parties are

 9 | and how many of them agree with a particular perspective.

10 | Instead of the court of public opinion, this is a court where

11 | the determination will be made on the evidence and the law, not

12 | who participates in the lawsuit.

13 |         Simply because a person holds public office or has

14 | firmly held views on a matter does not entitle them to

15 | participate in a lawsuit.  In order to have legal standing,

16 | they must have a right that they are about to lose.  In a case

17 | like this, a case that seeks to prospectively prevent the

18 | application of a criminal statute, that usually means they are

19 | likely to be subject to criminal prosecution in the future.  It

20 | can also mean that they are likely to lose some other

21 | recognized right or property interest by enforcement of the

22 | law.  Thus, what is necessary here is for a plaintiff to

23 | establish that he or she is under a real and immediate threat

24 | of being injured in the future.

25 |         With regard to the statute prohibiting large-capacity

1   magazines, there is an exception to enforcement against

2   individuals who are employees of a department or an agency of

3   this state; and that covers all of the sheriffs so long as they

4   are sheriffs.  There are, however, 11 individuals who state

5   that they will be retiring from law enforcement within roughly

6   the next year.  These individuals are Mr. John Cooke, Mr. Ken

7   Putnam, Mr. James Faull, Mr. Larry Kuntz, Mr. Fred Jobe,

8   Mr. Donald Krueger, Mr. Stan Hilkey, Mr. Dave Strong, Mr. Peter

9   Gonzalez, Ms. Sue Kurtz, and Mr. Douglas Darr.

10          Their ability to participate in this lawsuit arises

11   from a potential loss that could arise from enforcement against

12   them after they cease to fall within the exception to the

13   statute.

14          Now, truly, it is January of 2015 that is the earliest

15   time period at which it appears from this Complaint that they

16   would fall victim, potentially, to such a law; but I find that

17   to be imminent enough to allow them to participate in this

18   action.

19          As to the other sheriffs, their joinder in this action

20   and their motion to amend must be denied, because it is futile.

21   They do not have current standing.  There has been no showing

22   with regard to the large-capacity magazine statute that they

23   are likely to lose a right or property interest or be subject

24   to prosecution.

25          And as to the statute requiring background checks, the

1   Amended Complaint offers only a singular paragraph that in

2   substance attempts to address standing.  It says that the

3   sheriffs as a group wish to sell, buy, give, and loan handguns

4   to or from anyone, including their families.  Such allegation

5   is too summary, too unspecific, too general, to indicate which

6   individuals might have standing due to a real and immediate

7   threat of being injured by enforcement of that statute.

8          As a consequence, I find that there was good cause to

9   bring both motions, that arising from my determination on the

10  motion to dismiss, but that no standing -- no facts sufficient

11  to establish standing of most of the sheriffs has been offered.

12  And, therefore, any amendment to the Complaint and any joinder

13  in the lawsuit is denied.

14         As to the 11 individuals that I have named, they may

15  join this lawsuit as plaintiffs, and the Complaint may be

16  amended to add the paragraphs that specifically deal with them.

17  They are paragraphs 107, 112, 123, 124, 130, 131, 136, 140,

18  147, 157, and 160.  A conclusory statement may be added with

19  regard to each claim that is asserted, indicating which of

20  these individuals assert -- joins in a particular claim.  No

21  new claims may be asserted; no new attachments to the Complaint

22  may be submitted.  The case will be framed as it currently is,

23  subject to the ruling that I made with regard to the motion to

24  dismiss.

25         Any need for clarification or further explanation?

1    MR. KOPEL:  If I could, Your Honor, just to follow

2  your instructions.  Would the case, then, be recaptioned with

3  the 11 individuals in the order in which they currently appear?

4    THE COURT:  They may be added to the caption with

5  their individual names.

6    MR. KOPEL:  Okay, Your Honor.  Thank you.

7    THE COURT:  No titles.

8    MR. KOPEL:  Those have been out in all of our filings.

9    THE COURT:  Indeed, it is because these are individual

10  claims and they are premised upon these individuals no longer

11  being sheriffs.  There is no need to refer to their status as

12  sheriffs at this point.

13    MR. KOPEL:  Certainly, Your Honor.  And just to follow

14  your instructions:  So, for example, paragraph 112 is a little

15  bit of biographical information about a particular plaintiff.

16  Do you want that to stay as it is in the proposed --

17    THE COURT:  You can include that.

18    MR. KOPEL:  So we would include the biographical

19  paragraphs of those particular individuals and likewise include

20  the paragraphs which addressed 1224, not the addresses which

21  address 1229 in the -- to comply with your order; would that be

22  correct?

23    THE COURT:  No.  Mr. Kopel, in the Complaint, you have

24  now an -- 11 new plaintiffs.  They're not bringing any new

25  claims.  They may join in any of the claims that are asserted.

1    MR. KOPEL:  I see, Your Honor.  So the -- if I may

2  restate what I understand -- and please correct me, because,

3  obviously, I was wrong the first time.  The new Complaint

4  should have the biographical information about these particular

5  people.

6    THE COURT:  It shouldn't, but you can put it in there.

7    MR. KOPEL:  It can be in there, to state their names.

8  And then nothing -- and then it would simply state which of the

9  other Complaint -- the other issues raised elsewhere in the

10  Complaint by other individuals some or all of these particular

11  11 join in?

12    THE COURT:  Most often in a Complaint, each claim for

13  relief, one, two, three, four, has a statement that immediately

14  follows after the identification of the claim that says which

15  parties bring that claim.

16    MR. KOPEL:  Okay.

17    THE COURT:  Your Complaint here doesn't do that.  I'm

18  allowing you to say with regard to each of those claims what

19  parties bring the claim.

20    MR. KOPEL:  Thank you, Your Honor.  And so in that --

21  the new Complaint, for example, on the first claim -- first

22  claim for relief involving magazines, we would state each of

23  those 11 individuals, and we would also state the other

24  plaintiffs who also bring that particular claim; is that

25  correct?

1         *THE COURT:*  To the extent that all the plaintiffs are

2    asserting that claim, you can say "all plaintiffs assert that

3    claim."

4         *MR. KOPEL:*  Okay.  Thank you, Your Honor.

5         *THE COURT:*  Okay.

6         Yes, sir.

7         *MR. GROVE:*  While we're here, Your Honor, your order

8    raises some questions on discovery for us.

9         *THE COURT:*  Okay.

10        *MR. GROVE:*  And I'm not sure how attuned the Court is

11   to the history of how we've done discovery, so let me kind of

12   sketch it out for you.

13        With respect to the sheriffs, what the parties agreed

14   to do, with Magistrate Judge Watanabe's blessing, was identify

15   a small pool of sheriffs.  We didn't want all 55 of them coming

16   in and testifying, because it would be repetitive, who would

17   then -- that we would depose, and they would offer testimony at

18   trial or affidavits in support of or against summary judgment

19   motions.  You've knocked out five of those six who we had

20   deposed, and I --

21        *THE COURT:*  That doesn't prevent them from testifying.

22        *MR. GROVE:*  That's -- that's fair, Your Honor.  I can

23   understand that.  However, we haven't had an opportunity to

24   depose them because of an agreement we had.  What I wanted to

25   request is that we have an opportunity to confer with Mr. Kopel

1   to see which of those sheriffs may in fact be testifying.  It

2   may be all eleven, I don't know, it may be two or three, and

3   then for us to have an opportunity for us to take depositions

4   as we have before.

5           THE COURT:  Of the 11, you've taken depositions of how

6   many?

7           MR. GROVE:  One.

8           THE COURT:  I'm sorry?

9           MR. GROVE:  One.

10          THE COURT:  Okay.  Mr. Kopel, are you going to be

11  calling different witnesses than you previously identified to

12  the defendant?

13          MR. KOPEL:  If I could ask a question, Your Honor,

14  that would help provide the answer to that.

15          Of the six who were deposed, as my Brother Grove has

16  indicated, one of them is in this set of eleven.  All of the 55

17  are members of the Colorado State Shooting Association, one of

18  the plaintiffs in the case.  So of those five who were deposed

19  but are not on this list, would it be permissible for them to

20  testify in this case as individuals who belong to the state

21  shooting association?

22          THE COURT:  Mr. Kopel, witnesses are witnesses.  They

23  don't need to be parties.

24          MR. KOPEL:  I appreciate the clarification -- thank

25  you, Your Honor.  I want to make sure --

1    *THE COURT:*  So the question is, are you going to be

2    calling different witnesses than you've previously disclosed to

3    the defense?

4         *MR. KOPEL:*  And the answer to that is no, Your Honor.

5         *THE COURT:*  Okay.

6         *MR. KOPEL:*  Your Honor, if I may raise one other

7    issue.

8         Since the -- there are two other -- two others on

9    this -- in this group for whom there is a date certain for

10   retirement.  It was not stated in the pleadings, but I would

11   inform you that Terry Maketa will be retiring in January, 2015,

12   and Grayson Robinson will be retiring on January 31, 2014.

13        *THE COURT:*  Mr. Kopel, it's too late.

14        *MR. KOPEL:*  I thought --

15        *THE COURT:*  And this is redundant.

16        *MR. KOPEL:*  Certainly, Your Honor.

17        *THE COURT:*  The inclusion of these plaintiffs does not

18   change the issues or the evidence that's going to be presented.

19        *MR. KOPEL:*  I accept that, Your Honor.  Thank you.

20        *THE COURT:*  All right.

21        Okay.  It sounds like that the defense, you're not

22   going to have any different witnesses.  I'm assuming that means

23   you don't need any further discovery.

24        *MR. GROVE:*  That resolves our concern, Your Honor.

25        *THE COURT:*  Okay.  Now, there was mention made about

1    the filing of dispositive motions.  And part of this -- the

2    reason I set this hearing down is to determine whether or not

3    there should be any dispositive motions.

4          There is a belief in civil litigation that dispositive

5    motions should be filed in every lawsuit.  My experience is

6    that only 15 percent of the time -- and that's a national

7    average -- does it matter.  So in order to move things most

8    expeditiously, you can bypass filing dispositive motions unless

9    there is going to really be something decided here and it would

10   shorten a trial.  I would suggest to you that you do that and

11   move the matter to trial, if there is going to be a trial, as

12   soon as we can.

13         So I'd like to hear from each side as to how any

14   summary adjudication under Rule 56 would streamline or avoid a

15   trial, what claims or issues should be tried, and whether there

16   should be any separate trial under Rule 42(b) of any claims or

17   issues.

18         Who would like to start on this one?

19         *MR. KRUMHOLZ:*  Your Honor, on behalf of the

20   plaintiffs, I'm happy to start the discussion as to those

21   issues that you've raised.

22         The plaintiffs' position, Your Honor, is that summary

23   judgment will not resolve any of the claims, much less most of

24   them.  And so we believe that it makes the most sense to

25   proceed to trial, proceed to putting together a final pretrial

 1  order on which we can then base trial briefs for Your Honor's

 2  consideration prior to the trial.  So we don't -- as to your

 3  second question, we don't believe there is any issue that is

 4  appropriate for summary judgment in this case.

 5          THE COURT:  How about for bifurcation?

 6          MR. KRUMHOLZ:  As for bifurcation, Your Honor, I'm not

 7  sure which of the claims you had in mind.  My guess was the ADA

 8  claim.

 9          THE COURT:  Correct.

10          MR. KRUMHOLZ:  With respect to that, Your Honor, Rule

11  42(b) is directed at achieving efficiency.  And we will have

12  the same witnesses with respect to the ADA claims as we would

13  have -- some of the same witnesses that we would have in the

14  ADA claims as we'll have in our Second Amendment claims.  So

15  because of that overlap, there is no efficiency to be gained,

16  Your Honor, from the bifurcation.

17          THE COURT:  All right.  Thank you.

18          For the State.

19          MR. GROVE:  What I'm about to say may not surprise

20  you, Your Honor.

21          We think that all the claims are ripe and appropriate

22  for summary judgment in this case.  And I can sketch out why,

23  if you'd like.

24          THE COURT:  Please.

25          MR. GROVE:  Legal issues predominate this.  And the

1    course of discovery in this case has demonstrated that

2    virtually all of the operative facts are not in dispute.  There

3    are some things at the margins that are certainly in question.

4    But even more important than that, whether or not a summary

5    judgment motion ended up being granted on all the claims,

6    what's very important in this case is that we are sketching out

7    the structure of the Second Amendment.  And this is not

8    something that has -- that the Tenth Circuit, any court in the

9    Tenth Circuit has really had an opportunity to do at this level

10   of detail.  So there are very important legal questions that

11   should be considered in the context of a summary judgment

12   motion that are based on almost totally undisputed facts, for

13   example.

14        THE COURT:  They have to be wholly undisputed.  Not

15   almost wholly; wholly undisputed facts.

16        MR. GROVE:  Let me clarify that.  Wholly undisputed

17   material facts.

18        THE COURT:  Okay.

19        MR. GROVE:  For example, what does "common use" mean?

20   One of the plaintiffs' theories, as I understand it, is that a

21   magazine is an arm that is protected by the Second Amendment.

22   That's another question.  And, B, that it's in common use,

23   *Heller* says that you can't do anything to restrict it.  If the

24   plaintiffs are correct on that claim, we probably lose,

25   frankly.

1              THE COURT:  How would that speed the trial ultimately?

2              MR. GROVE:  It would streamline the format of the

3        trial, because it would -- getting a ruling on what that means

4        would allow the parties to tailor the evidence that they

5        presented at trial and address those questions directly.

6              THE COURT:  Let's use that as an example.  What

7        evidence would be excluded if there were a determination as to

8        whether or not a magazine was an arm?

9              MR. GROVE:  Well, if the determination is that a

10       magazine is not an arm, then summary judgment is appropriate,

11       and there wouldn't be a trial to begin with.

12             THE COURT:  But if the answer goes to the contrary,

13       how does that speed the determination at trial?

14             MR. GROVE:  I agree that it probably wouldn't in this

15       case.  We're not going to present any evidence that I can think

16       of off the top of my head -- although, don't hold me to that.

17             THE COURT:  Okay.

18             MR. GROVE:   -- that a magazine isn't an arm.  I think

19       that is primarily the legal argument.  But at the same time,

20       our goal is to have the Court address that in a summary

21       judgment motion and consider it.  Argument A in our summary

22       judgment motion is likely to be, a magazine is not an arm;

23       therefore, House Bill 1224 does not impinge on conduct that

24       falls within the scope of the Second Amendment's guarantee.

25             THE COURT:  All right.  I'm not inclined to have

1   dispositive motions, because all of that briefing can be done

2   in the context of pretrial preparation for trial.  So unless

3   you can show me that there is some issue that can be determined

4   that will ultimately streamline a trial, I'm happy to entertain

5   all of your legal arguments in the context of the trial.

6         MR. GROVE:  When Your Honor says "streamline," what

7   exactly do you mean by that?  I'd like to tailor what I'm

8   saying to what you're saying.

9         THE COURT:  Cuts out evidence, narrows the issues,

10  remembering that any determination on a motion for summary

11  judgment is purely interlocutory and can being reconsidered at

12  the time of trial.

13        MR. GROVE:  At a minimum, we think that if we're going

14  to push forward and go to trial, that the ADA claim and 1229

15  should be severed.

16        There are also --

17        THE COURT:  Tell me why you think they should be

18  severed.

19        MR. GROVE:  Well, the first -- the threshold question

20  under all of these, and 1224 is included here, is -- are

21  standing, ripeness, justiciability.  With respect to the ADA,

22  the first question that the question the Court has to ask and

23  answer is, can the ADA apply to the statute?  Is the statute a

24  service program or activity of the state of Colorado?  And

25  under Tenth Circuit precedent, *Elwell v. Oklahoma Board of*

1  *Regents*, our position is going to be that it is not.

2          With respect to 1229, the threshold question is, is

3  there a private right to sell or transfer a firearm to another

4  individual without going through a federally licensed firearms

5  dealer?

6          *THE COURT:*  May I inquire as to why that issue was not

7  brought up in the motion to dismiss?

8          *MR. GROVE:*  We would have loved to have raised it in a

9  motion to dismiss, Your Honor.  The pressure -- the time

10  pressure did not allow us to do it.  Our position is that it's

11  still appropriate for summary judgment.

12          *THE COURT:*  All right.  Is there any other issue that

13  you think might impact a trial, either by bifurcation or by

14  summary determination?

15          *MR. GROVE:*  The standard of review that the Court

16  applies, assuming that any of the activities or conduct that

17  are implicated by the plaintiffs' complaint, is a very

18  important issue and, again, will guide the course of the

19  evidence at the time.  So we plan to advocate -- this is

20  something that is wide open in the Tenth Circuit -- that if the

21  burden on the plaintiffs that they have alleged is not

22  substantial, that rational basis applies.  And that it's the

23  plaintiffs' burden to get across that line and demonstrate that

24  there is a substantial burden in order for anything higher than

25  rational basis -- anything more strict than rational basis

1    would apply.

2         Summary judgment briefing would give us an opportunity

3    to argue that and, again, would provide guidance to the parties

4    as to who bears the burden at trial and how that burden might

5    be carried.

6         THE COURT:  Anything else?

7         MR. GROVE:  There is also the question of experts and

8    who -- who will testify at trial, who will be necessary to

9    testify at trial.  The -- the standard that the Court ends up

10   applying, decides is appropriate, may influence which experts

11   are eventually called, which expert opinions are proffered by

12   those experts.

13        And I think that's all I've got.

14        THE COURT:  Okay.  Let me hear from the plaintiffs

15   with regard to that.

16        MR. KRUMHOLZ:  Thank you, Your Honor.  There were a

17   couple of points Mr. Grove made that I wanted to respond to.

18        Number one, the suggestion that we could somehow

19   streamline the case by arriving at summary judgment as to prong

20   1, that is whether or not 16-plus magazines are protected under

21   the Second Amendment, the problem with that, Your Honor, is

22   there is tremendous overlap in the evidence between the proof

23   as to prong 1 and the proof as to prong 2.  And that's

24   especially so depending on -- depending on the level of

25   scrutiny that this court chooses to apply.

1     If you apply level of scrutiny that requires some sort

2   of balancing, well, then, that balancing process is going to

3   require some evidence that folds back onto the question of what

4   the -- what the nature of the burden is on the plaintiffs and

5   their Second Amendment rights.

6         I believe that's all I have for now, Your Honor.

7     *THE COURT:*  Okay.  Thank you.  I remain unpersuaded

8   that dispositive motions will significantly streamline trial in

9   this matter.  I'm also unpersuaded that a determination as

10  requested by the defendant as to the standard of scrutiny can

11  be made in a vacuum.  It ultimately is a legal question, but it

12  depends upon how severe the burden is on what are determined to

13  be core Second Amendment rights.  And the severity of the

14  burden and the identification of core Second Amendment rights

15  may be impacted by the presentation of evidence.  And so while

16  it ultimately is a legal determination, it is a determination

17  arguably based upon factual evidence.

18        As to the ADA issue, my initial thought was that that

19  could be bifurcated.  I'm persuaded by the plaintiffs'

20  representation that some of the same evidence that they would

21  use with regard to the other claims would apply to the ADA.

22  Obviously, the ADA claim has different standards.

23        Were this a jury trial, there might be some argument

24  for a presentation after some framing up of issues through

25  dispositive motions.  But where you're going to be presenting

1  both the evidence and the argument to the Court, it makes very

2  little difference whether it is in the form of a dispositive

3  motion or it is at trial.

4        So in deference to the need to have this matter

5  determined as promptly as possible in order to conserve the

6  resources of the parties and resolve the issues as

7  expeditiously as we can, I'm inclined to just have a trial.

8  And I will set a deadline for the filing of a proposed final

9  pretrial order today.

10        When will you be ready to file your proposed final

11  pretrial order?

12        MR. GROVE:  Your Honor, if I could just throw this out

13  there.  We haven't conferred with them.  Would it be possible

14  just to set a trial date and work backward from that?  I'm not

15  sure if that's how you do things.

16        THE COURT:  Well, I can do them in a number of

17  different ways.  It's a little hard to set a trial date until

18  you know how much time it's going to take to try the case.  Do

19  you feel like you know that today?

20        MR. GROVE:  I know that we had discussed originally in

21  the scheduling order that ten days was contemplated.  I don't

22  know if that has changed.

23        THE COURT:  Here is how I usually do it:  A trial day

24  is generally six hours in the courtroom, so six hours for

25  presentation of evidence and argument and objections and

1  rulings.  I usually look at the number of witnesses that are

2  going to be called and the amount of time that you all think

3  it's going to take to examine those witnesses, and I figure out

4  how many days we need based on that.

5         Now, maybe you've done that in your calculation of ten

6  days.  But let me assure you that if you tell me ten days,

7  that's what you get, but no more.

8         MR. GROVE:  Speaking for the defendant, Your Honor,

9  I'd be very surprised if we exceeded our five-day allotment.

10        THE COURT:  Okay.

11        MR. KRUMHOLZ:  Your Honor, if I understand your court

12  procedure with respect to pretrial orders, it is not a small

13  undertaking.  So we would propose that a deadline for a

14  pretrial order be sometime in the middle of January, which

15  would give us sufficient time between now and then to do the

16  things that we need to do to put together that pretrial order,

17  on which then you can base your determination of when the trial

18  will be, and we can make our determination how long we think

19  it's going to take.

20        THE COURT:  So do I understand you to say,

21  essentially, you don't agree with the ten-day trial?

22        MR. KRUMHOLZ:  No, I don't -- Your Honor, I think the

23  plaintiffs agree that at the moment, ten days still sounds like

24  an appropriate amount of time.

25        But as -- the pretrial order process is designed to

1   help us -- aid us in that, in making that determination.  And

2   so standing here now, on December 19, ten days sounds

3   appropriate to the plaintiffs.  Based on the work we do in

4   putting together the pretrial order, we may have a different

5   view.  I don't foresee that, but it's possible.

6          THE COURT:  Well, if you agree that ten days is the

7   amount of time you need for trial, I'll go ahead and set a

8   trial today.

9          MR. KRUMHOLZ:  We would not be opposed to that.

10  Thanks, Judge.

11         THE COURT:  Okay.  When are you going to be ready to

12  go to trial?

13         MR. GROVE:  I assume next October is probably off the

14  table at this point.

15         THE COURT:  Pretty much.  I'm thinking February or

16  March.

17         MR. GROVE:  Certainly, the later, the better for us.

18  One issue that would need to be resolved is 702 motions.

19         THE COURT:  We can address that in a minute.

20         MR. GROVE:  Okay.  So -- as late as you could possibly

21  set it is fine with us, Your Honor.

22         THE COURT:  Okay.  My objective here is to comply with

23  rule one, not to set the trial as late as possible, but to set

24  a trial as soon as you can be ready.

25         MR. GROVE:  And I think that March, Your Honor -- it

1  probably compatible with that.  But this is a major

2  undertaking.

3          THE COURT:  All trials are major undertakings.  I

4  understand that, but I have every confidence that you will have

5  adequate time to do what you need to do.

6          MR. GROVE:  I appreciate your faith in us, Your Honor.

7          MR. KRUMHOLZ:  Your Honor, February and/or March would

8  be fine with us.

9          THE COURT:  All right.  We'll set the trial, then, to

10  begin on March 31 and to run until April 11.

11          Trial will begin at 8:30 a.m. on Monday morning, the

12  31st.  It will run all of the days that week.  It will continue

13  on April 7th through the entirety of that week -- I should say,

14  the time allotted for it.  It will not extend beyond the 11th.

15  You'll each have 30 hours in which to make your presentation.

16  That includes all of your examination, cross-examination,

17  redirect examination, it includes all of your objections or

18  your responses to objections, your opening arguments, your

19  closing arguments.  You can allocate your time however you

20  want.  Rulings that I make will be divided 50/50, so that the

21  time is spent equally by each side.  And Ms. Glover will keep

22  track of this on a chess clock, so you can ask her at any point

23  in time where your time is.

24          We'll set the time for filing the final pretrial order

25  at January 31, 2014.  And only in the event that that final

 1  pretrial order indicates that the amount of time that's

 2  currently set for trial is inappropriate will the amount of

 3  trial time be changed.

 4       We'll set January 15, 2014, as the date for the filing

 5  of any joint 702 motions.  That actually is later than the

 6  deadline that you originally had with regard to the pretrial

 7  scheduling order.

 8       MR. GROVE:  Your Honor, may I just follow up on the

 9  702 question quickly?

10       THE COURT:  Uh-huh.

11       MR. GROVE:  We had discussed -- Mr. Colin is not here

12  today.  I had discussed the possibility, given this is a bench

13  trial -- I know that Your Honor typically holds an evidentiary

14  hearing on 702s before the trial.  And what we had discussed

15  was filing the joint 702 motions as contemplated by the Court

16  and just folding that into -- folding that into the trial

17  itself.

18       THE COURT:  I think that makes good sense.  But I

19  would like to have the joint 702 motion so I know where your

20  areas of disagreement are.

21       MR. GROVE:  Absolutely.

22       THE COURT:  And it's important that they be joint.

23       MR. GROVE:  We'll --

24       THE COURT:  Otherwise it doesn't work real well, when

25  everybody is guessing what the other folks' opinion is going to

1  be.

2          I urge you to think about those opinions and not use a

3  comprehensive scatter-shot approach under Rule 702.  In other

4  words, if the methodology is a reliable methodology, please

5  don't challenge it.  If someone has adequate experience,

6  training, expertise, et cetera, please don't challenge that.

7          If you're looking at sufficiency and facts -- of the

8  facts and data, remember that the Tenth Circuit uses a

9  quantitative measure, not a qualitative measure.  So it's not,

10 what did you look at?  It's whether you looked at enough.

11         Any other matters that we should address, anticipating

12 trial?

13         Then we'll set a pretrial conference date -- yes, sir.

14         MR. GROVE:  Do you expect an Answer to the Fourth

15 Amended Complaint, and when?

16         THE COURT:  I haven't set a date for when it's going

17 to be filed.  And given the slight amendment that's going to

18 occur, I'm going to set a very tight Answer date and before

19 your final pretrial order is submitted, because that, of

20 course, will take the place of all of the previous pleadings.

21         So we'll set --

22         Mr. Kopel, when do you plan on the earliest date that

23 you can file the Fourth Amended Complaint?

24         MR. KOPEL:  Your Honor, I believe we could file the

25 Amended Complaint, consistent with your instructions, on

1    Monday, if that would be all right.

2           THE COURT:  On the 23rd?

3           MR. KOPEL:  Yes.

4           THE COURT:  Okay.

5           MR. KOPEL:  And I have one question on captioning.  It

6    was discussed today as being the Fourth Amended Complaint, but

7    since the Third Amended Complaint never really made it across

8    the finish line, should I call this the third or the fourth?

9           THE COURT:  The fourth.

10          MR. KOPEL:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          Can you file an Answer by the 3rd of January?

13          MR. GROVE:  Yes, Your Honor.

14          THE COURT:  Okay.  That will be our date for our

15   Answer on this.

16          Let me do a couple of cleanup rulings here.

17          We have the motion for extension of time to file

18   dispositive motions at Docket No. 97.  It is denied for the

19   reasons that have been expressed during the hearing.

20          Docket No. 105, an unopposed motion for leave to

21   restrict, this was a motion seeking restricted access to

22   certain exhibits that were attached to the Third Amended

23   Complaint.  Since the Third Amended Complaint is essentially

24   withdrawn and those exhibits will not be considered, I'm going

25   to deny the motion for leave to restrict but leave the exhibits

 1  under restriction.

 2          I don't think there are any other pending motions.

 3  Have I overlooked any?

 4          Then we need to set a final pretrial conference.  We

 5  can set that for February 20 at 3 o'clock p.m.  Will that work

 6  for everybody?

 7          MR. GROVE:  That's fine for the Government, Your

 8  Honor.

 9          MR. KOPEL:  Your Honor, I teach at Denver University

10  Law School at that particular time; but my students, I'm sure,

11  would appreciate a day off.

12          THE COURT:  You can bring them into the courtroom, and

13  they can watch what is going on.

14          MR. KOPEL:  Thank you, Your Honor.

15          MR. GROVE:  There is -- that just triggered something

16  in my mind, Your Honor.

17          In your trial preparation memo, there is an indication

18  that the final pretrial conference, that the defendant needs to

19  appear in person.  This is an official capacity suit.  Would a

20  representative of the Governor's office be here be sufficient,

21  or would you like Governor Hickenlooper here in person?

22          THE COURT:  The reason that that is there is because

23  oftentimes the parties have little idea what happens in a real

24  trial.  Their experience has been watching things on TV, in the

25  movies; and real trials are different than what we see in the

1   media.  And one of the things that I try to do at the final

2   pretrial conference is help the parties have realistic

3   expectations as to what is going to happen at trial.  This

4   isn't one of those cases.  And as a consequence, I don't

5   believe any parties need to be here for the final pretrial

6   conference.

7          MR. GROVE:  Thank you, Your Honor.

8          THE COURT:  You're welcome.

9          Anything else that we need to deal with today?

10         MR. GROVE:  Nothing from the Governor, Your Honor.

11         THE COURT:  Thank you.  How about for the plaintiffs?

12         MR. KRUMHOLZ:  No, Your Honor.

13         THE COURT:  All right.  Then I will look forward to

14  seeing you in February, and we'll have this matter at trial by

15  the end of March.

16         We'll stand in recess.  I wish you all happy holidays.

17         (Recess at 4:07 p.m.)

18                   REPORTER'S CERTIFICATE

19

20      I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

21

22      Dated at Denver, Colorado, this 30th day of September,

23  2014.

24                              s/Therese Lindblom

25                         _____

                             Therese Lindblom,CSR,RMR,CRR

```
 1 ||                 THE UNITED STATES DISTRICT COURT
   ||                   FOR THE DISTRICT OF COLORADO
 2 ||
   || Civil Action No. 13-CV-1300-MSK-MJW
 3 ||
   || COLORADO OUTFITTERS ASSOCIATION,
 4 || COLORADO FARM BUREAU,
   || NATIONAL SHOOTING SPORTS FOUNDATION,
 5 || MAGPUL INDUSTRIES,
   || COLORADO YOUTH OUTDOORS,
 6 || USA LIBERTY ARMS,
   || OUTDOOR BUDDIES, INC.,
 7 || WOMEN FOR CONCEALED CARRY,
   || COLORADO STATE SHOOTING ASSOCIATION,
 8 || HAMILTON FAMILY ENTERPRISES, INC.,
   || d/b/a FAMILY SHOOTING CENTER AT CHERRY CREEK STATE PARK
 9 || DAVID STRUMILLO,
   || DAVID BAYNE,
10 || DYLAN HARRELL,
   || ROCKY MOUNTAIN SHOOTERS SUPPLY,
11 || 2ND AMENDMENT GUNSMITH & SHOOTER SUPPLY, LLC,
   || BURRUD ARMS INC. D/B/A JENSEN ARMS,
12 || GREEN MOUNTAIN GUNS,
   || JERRY'S OUTDOOR SPORTS,
13 || SPECIALTY SPORTS & SUPPLY,
   || GOODS FOR THE WOODS,
14 || JOHN B. COOKE,
   || KEN PUTNAM,
15 || JAMES FAULL,
   || LARRY KUNTZ,
16 || FRED JOBE,
   || DONALD KRUEGER,
17 || STAN HILKEY,
   || DAVE STONG,
18 || PETER GONZALEZ,
   || SUE KURTZ,
19 || DOUGLAS N. DARR,
   ||
20 ||     Plaintiffs,
   ||
21 || vs.
   ||
22 || JOHN W. HICKENLOOPER, GOVERNOR OF THE STATE OF COLORADO,
   ||
23 ||     Defendant.
   || _____
24 ||
   ||                     REPORTER'S TRANSCRIPT
25 ||                   FINAL PRETRIAL CONFERENCE
   || _____
```

2

```
 1        Proceedings before the HONORABLE MARCIA S. KRIEGER,

 2   Judge, United States District Court for the District of

 3   Colorado, commencing at 3:03 p.m., on the 20th day of February,

 4   2014, in Courtroom A901, United States Courthouse, Denver,

 5   Colorado.

 6

 7                        APPEARANCES

 8        RICHARD A. WESTFALL and PETER J. KRUMHOLZ, Attorneys
     at Law, Hale Westfall, LLP, 1600 Stout Street, Suite 500,
 9   Denver, Colorado, 80202, appearing for the Plaintiffs.

10        DOUGLAS ABBOTT, Attorney at Law, Holland & Hart, LLP,
     555 17th Street, Suite 3200, Denver, Colorado, 80202, appearing
11   for the Plaintiffs.

12        MARC F. COLIN, Attorney at Law, Bruno, Colin & Lowe
     P.C., 1999 Broadway, Suite 3100, Denver, Colorado, 80202,
13   appearing for the Plaintiffs.

14        ANTHONY JOHN FABIAN, Attorney at Law, 510 Wilcox
     Street, Castle Rock, Colorado, 80104, appearing for the
15   Plaintiffs.

16        DAVID BENJAMIN KOPEL, Attorney at Law, Independence
     Institute, 727 East 16th Avenue, Denver, Colorado, 80203,
17   appearing for the Plaintiffs.

18        MATTHEW DAVID GROVE, LEEANN MORRILL, KATHLEEN L.
     SPALDING, and STEPHANIE LINDQUIST SCOVILLE, Assistant Attorneys
19   General, Colorado Attorney General's Office, Ralph L. Carr
     Colorado Judicial Center, 1300 Broadway, Denver, Colorado,
20   80203, appearing for the Defendant.

21

22

23

24             THERESE LINDBLOM, Official Reporter
              901 19th Street, Denver, Colorado 80294
25        Proceedings Reported by Mechanical Stenography
              Transcription Produced via Computer
```

1912

```
 1                      P R O C E E D I N G S

 2           THE COURT:  We're convened this afternoon in Case No.

 3   13-cv-1300, that has a number of different named parties.  The

 4   matter is before the Court for purposes of considering the

 5   proposed final pretrial order.

 6           Could I have entries of appearances, please.

 7           MR. COLIN:  Good afternoon, Your Honor.  Mark Colin on

 8   behalf U.S.A. Liberty Arms, Rocky Mountain Shooter Supply,

 9   Second Amendment Gunsmith and Shooter Apply, Jensen Arms, Green

10   Mountain Guns, Jerry's Outdoor Sports, Specialty Sports and

11   Supply, and Goods for the Woods.

12           THE COURT:  Thank you.

13           MR. WESTFALL:  Good afternoon, Your Honor.  Richard

14   Westfall of Hale Westfall.  With me at counsel table, also of

15   Hale Westfall, is Peter Krumholz.  We are appearing David

16   Bayne, Dylan Harrell, Outdoor Buddies, Inc., Colorado

17   Outfitters Association, Colorado Farm Bureau, Women for

18   Concealed Carry, and Colorado Youth Outdoors.  Thank you, Your

19   Honor.

20           THE COURT:  Thank you.

21           MR. KOPEL:  Good afternoon, Your Honor.  David Kopel

22   appearing on behalf of David Strumillo, John B. Cooke, Ken

23   Putnam, James Faull, Larry Kuntz, Fred Jobe, Donald Krueger,

24   Stan Hilkey, Dave Stong, Peter Gonzalez, Sue Kurtz, and Douglas

25   N. Darr.
```

4

 1          Pursuant to your instructions at the December 19

 2   hearing, my Denver University Law School class is present to

 3   see how federal courts really work.

 4          THE COURT:  Good.  Welcome.

 5          MR. ABBOTT:  I'm Doug Abbott.  Good afternoon, Your

 6   Honor.  I'm here representing Magpul Industries and the

 7   National Shooting Sports Foundation.

 8          THE COURT:  Good afternoon and welcome.

 9          MR. FABIAN:  Good afternoon, Your Honor.  I am Anthony

10   Fabian, representing Colorado State Shooting Association and

11   Hamilton Family Enterprises.

12          THE COURT:  Good afternoon and welcome.

13          MR. GROVE:  Matthew Grove, Your Honor, on behalf of

14   the Governor.  With me at counsel table are LeeAnn Morrill,

15   Kathleen Spalding, Stephanie Scoville.

16          THE COURT:  Good afternoon and welcome.

17          I've had an opportunity to look at your proposed final

18   pretrial order.  Without expressing any opinion as to whether

19   the elements of the claims have been appropriately denominated

20   or whether the defenses have been appropriately characterized

21   as affirmative defenses, I approve the proposed final pretrial

22   order.  It indicates that there are some issues that still need

23   to be resolved, and it appears to me that your list of

24   witnesses and estimated time and list of exhibits still exceeds

25   the amount allotted for trial.

1    What that means is, you all will have to cull out what

2    it is you're going to present.  You have 30 hours on each side.

3    As I told you before, that's for everything, so all the

4    argument you want to make, it's all the examination you want to

5    engage in, it's all of your objections, it's everything.  There

6    will not be any extensions of time, so you'll all have to

7    figure out how you want to do that.

8    And as to the plaintiffs, I expect you'll coordinate

9    so there are no repetitive questions asked, there is no

10   repetitive examination or arguing with regard to objections.

11   How you want to structure your presentation of your witnesses,

12   is entirely up to you, and maybe one attorney takes the lead

13   with one witness, another does with another witness.  The only

14   thing I ask is that you be sure to tell the opposing side, the

15   defendant, what witnesses you're going to be calling at least a

16   day before they appear.

17   In addition, you'll need to have your witnesses here.

18   If you don't have a witness available to testify, you lose that

19   time.

20   Now, we do have some issues that are noted in your

21   proposed final pretrial order.  First, I understand you want to

22   file trial briefs.  You're free to file trial briefs.  They

23   should be filed by March 14.

24   Secondly, apparently the defendant wants to raise

25   standing issues.  Is that right?

1          MR. GROVE:  Yes, Your Honor.  It would be

2    encompassed -- I think the facts need to come out before some

3    of the standing issues could be raised.

4          THE COURT:  Well, that's a problem, because generally

5    standing is determined before any evidence is received.

6    Whether this court has jurisdiction depends upon the facts as

7    they have been alleged, not the facts as established at trial.

8          So are you going to have standing issues before trial?

9          MR. GROVE:  Based on some of the stipulations, I do

10    think that we could raise them.

11          THE COURT:  Well, we're pretty far down this path.  If

12    you intend to raise standing issues -- the reason we raise

13    standing issues, let me start with, is so that we can avoid

14    having a trial if one is not appropriate.  If the Court doesn't

15    have jurisdiction to decide something, that's something the

16    Court has to decide before we get to the merits.  And that's

17    why I mentioned "standing" back in July.  If you want to

18    proceed with standing, you may file a brief addressing standing

19    issues.  That brief must be filed by March 7, and any

20    responsive brief must be filed by March 14.

21          Then we have -- it looks like a couple of outstanding

22    motions.  The ones that I have before me are an -- a motion for

23    leave to restrict at Docket No. 124 and a motion for an order

24    to close the courtroom, found at Docket No. 123.

25          Ms. Glover, were both of these motions -- would you

7

```
 1   check and see if these were posted for public review on the

 2   website?

 3           You're not finding them on the website?

 4           COURTROOM DEPUTY:  It's more my deficiency in doing

 5   so.

 6           THE COURT:  Counsel, were they posted?

 7           MR. GROVE:  I haven't actually looked at that, Your

 8   Honor.

 9           THE COURT:  Okay.

10           MR. KOPEL:  Nor have I checked on that.

11           THE COURT:  Okay.  Our local rules provide that they

12   have to be posted on the website, and they have to be posted

13   for at least three days.  The reason is because the public has

14   a right to respond.  It's not good enough that the parties to a

15   lawsuit agree that something be restricted or that the

16   courtroom be closed, because the public has an interest in

17   having access to the proceedings and the evidence that is

18   presented here in the courtroom.  That's how the public can

19   double-check on the process, so we don't have a star chamber.

20   And that's why it's not sufficient for the parties to just

21   agree that certain evidence won't be made available to the

22   public or that the courtroom will be closed at a particular

23   period in time.

24           I don't know whether these have been posted for the

25   full amount of time required.  I'm guessing that they may have,
```

1917

1    because they were filed on February 14.  But without being sure

2    that that's the case, I can't be sure that I can rule on them

3    today.

4         With regard to these, however, I will note this:  I am

5    disinclined toward closing the courtroom or restricting access

6    to evidence that is presented.  Our local rules provide that

7    that kind of restriction of public access will occur only when

8    there is no other viable means to serve the protective purpose

9    that has been articulated.

10        With regard to both of these motions, having looked

11   carefully at them, I am not satisfied that all other available

12   means have been considered.  So I strongly request that counsel

13   consider all available means other than the relief requested.

14        Let me give you some examples.  First of all, think

15   about whether or not the evidence is really relevant.

16   Secondly, to the extent it is relevant, is all of it relevant?

17   Third, has it been presented in some other time or place or

18   manner?

19        So, for example, testimony you would like to elicit

20   during the trial, if that is part of a record of something

21   else, perhaps that record can be used.

22        In addition, are these facts that can be stipulated

23   to?  Many of the references that are made in these motions are

24   of marginal relevance to the issues we're going to be dealing

25   with.  Certainly, not everything that is referred to is

 1  relevant.  So the question is, what is relevant?

 2          In addition to that, some of what the parties seek to

 3  present may be able to be stipulated to without disclosure of

 4  the portion of the information that you're most concerned about

 5  keeping confidential.  So, creativity.

 6          What I'm seeing now from my staff that's looking at

 7  the website is, Docket No. 124, the motion to restrict, was

 8  posted on February -- I'm sorry, February 18.  The objection

 9  deadline for the public is February 21.  The motion at Docket

10  No. 123 was never posted.

11          Ms. Glover, would you please make a note in the

12  minutes that the clerk is directed to post Docket No. 123.

13          *COURTROOM DEPUTY:*  Sure.

14          *THE COURT:*  I will wait the requisite time period

15  before I consider these motions.  And if you would like to

16  amend the motion in that time period, you're free to do so.

17          Mr. Kopel.

18          *MR. KOPEL:*  Your Honor, I, too, found the record

19  showing that the motion on our side was filed on February 14

20  and posted on the 18th.  In light of your instructions, we

21  withdraw the motion, for the reasons you have suggested, that

22  the information has been presented elsewhere.

23          Thank you, Your Honor.

24          *THE COURT:*  All right.  Docket No. 124 is withdrawn.

25          Let me ask you if there is anything you want to know

 1   about the trial process that would assist you in preparing.

 2          MR. COLIN:  Your Honor, not so much in the form of a

 3   question about the trial process, but I think all of the

 4   parties have indicated in the proposed final pretrial order

 5   that we believe trial briefs are appropriate.  And I think the

 6   Court has dealt with that issue.  But we've also been

 7   discussing among ourselves potentially submitting closing

 8   arguments in writing and proposed findings of fact and

 9   conclusions of law.

10          THE COURT:  No, thank you.

11          MR. COLIN:  All right.  That's all I've got on that

12   issue, then.

13          THE COURT:  Thank you.

14          MR. KOPEL:  Your Honor, we have one ministerial

15   question on the filing of the pretrial briefs.  You had

16   suggested that the date was March 14.  Would that be March 14

17   at 11:59 or March 14 by the court's close of business at 5:00.

18          THE COURT:  That's governed by our local rules.

19          MR. KOPEL:  Thank you, Your Honor.  Then my

20   understanding is that would make it 11:59.  Thank you.

21          THE COURT:  Correct.

22          MR. GROVE:  I have a few, Your Honor.

23          THE COURT:  Sure.

24          MR. GROVE:  So just a couple of structural questions

25   to begin with.  As the Court knows, there are about half a

1  dozen -- I think there are half a dozen 702 motions that are

2  outstanding, and the Court has indicated we would take those in

3  stride as part of the trial.

4       THE COURT:  Let me explain how that works.  This is a

5  trial to the bench.  I will not be ruling on those 702 motions.

6  I will be taking your objections in mind when I make the final

7  determination on the issues.

8       MR. GROVE:  And does Your Honor anticipate -- in your

9  702 rules, the way that it is structured is -- for a 702

10 hearing, as I understand it, the experts list out the opinions,

11 and then for any that the opposing party objects to, they

12 conduct a voir dire on that, and then there is a ruling.  Does

13 the Court anticipate following that structure, understanding

14 that there wouldn't be a ruling from the bench?

15      THE COURT:  No.

16      MR. GROVE:  Just a general direct and then a cross?

17      THE COURT:  Right.  You've made your objections.

18 Since it's a trial to the bench, there is no need for going

19 through that exercise, because to the extent I agree with an

20 objection, I'll disregard the evidence.

21      MR. GROVE:  That makes sense.  Thank you for the

22 clarification.

23      THE COURT:  Uh-huh.

24      MR. GROVE:  I have a few other issues, if you don't

25 mind.

 1           There is a -- sort of a lingering dispute between the

 2   parties about the continued viability of Count 2 of the Fourth

 3   Amended Complaint.  And we'd like an opportunity to either

 4   argue it or file a motion in limine before we get to trial so

 5   we know exactly what is at issue here and what is not.

 6           THE COURT:  Well, you're welcome to argue it.  I don't

 7   think there is a big issue here.  I know you think there is a

 8   big issue, but for me it's not a big issue.  It's a matter of

 9   how it's been styled.  I have not ruled on anything in a

10   substantive fashion.  I regarded two claims as a single claim

11   in my prior ruling.  I likely will do the same thing when I

12   rule on this here, but it doesn't change how you're going to be

13   presenting your evidence.  There has been no dispositive

14   determination with regard to that.

15           MR. GROVE:  Okay.

16           THE COURT:  Does that help?

17           MR. GROVE:  I think that's the clarification that we

18   needed, yes.

19           THE COURT:  Okay.

20           MR. GROVE:  A couple of other housekeeping issues.  I

21   don't know how closely we need to adhere to the witnesses who

22   are listed with respect to the pretrial order.  There is one

23   omission that I can tell you about now in one of the claims.

24           THE COURT:  I'm not sure what you mean.  There is

25   someone you didn't list that you would like to call?

 1              MR. GROVE:  She's listed on the exhibit list, we just

 2    did not list her with respect to a particular claim.

 3              THE COURT:  It's not an issue.

 4              MR. GROVE:  Legislative history is another issue for

 5    this case.  It's voluminous.  We've got it all.  We've got it

 6    on the exhibit list.  I presume the Court doesn't want to read

 7    all 1,000 or 2,000 pages of it.  I was going to propose that we

 8    submit it and highlight for the Court the sections that we

 9    think are pertinent.

10              THE COURT:  No highlighting.

11              MR. GROVE:  Okay.

12              THE COURT:  And no repetitive information.  If it's in

13    the legislative history, then you shouldn't be presenting

14    evidence on it.

15              MR. GROVE:  Would the Court prefer that we don't

16    submit legislative history at all?

17              THE COURT:  It's up to you.  It's your case.  But we

18    don't need to have legislative history and duplicative

19    presentation of evidence.

20              MR. GROVE:  The difficulty for us, Your Honor, is that

21    we are -- the state is required to, at least in the plaintiffs'

22    view, advance the same rationale for the legislation as part of

23    our case as was advanced in the legislature.  And so what we'd

24    like to do is at least demonstrate that those two things are

25    the same.  We can do that in probably 10 or 15 pages of

1  legislative history.  If you'd prefer, we could excerpt that

2  and submit it.

3      *THE COURT:*  I'm not quite understanding, I'm sorry.  I

4  can never understand why you wanted to put on evidence in

5  addition to your legislative history, because you're exactly

6  right, you're bound by the rationale that was articulated at

7  the time that of the enactment.  So I presumed your case would

8  be your legislative history.  So I'm -- I mean, if your thought

9  is that somehow having people here to talk to me is going to be

10 more persuasive to me, it's not.

11     *MR. GROVE:*  I'm sorry.  I don't think I explained

12 myself very clearly.  All we want to do is make sure that the

13 record that presumably is going to go up to the Tenth Circuit

14 in this case reflects that in the event that we are required --

15 that the state is required to advance the same justifications

16 to the Court as it did in the legislature, that those two

17 things are essentially the same.  That for the large-capacity

18 magazine limitation, that the legislature talked about this and

19 this and this and that we present additional justification for

20 it here.  We explain that in more detail than perhaps -- and in

21 sworn testimony than perhaps got introduced in the legislature.

22 It's not -- the quality of the evidence, the type of the

23 evidence is not any different.  We just want to make sure that

24 we have the record and the Court has what it needs in order to

25 make the rational basis or intermediate scrutiny analysis it

1    needs to make.

2         THE COURT:  I understand you want to have a good

3    record for the Tenth Circuit.  We all do.  I don't want

4    duplicative evidence in the record.  So if there was testimony

5    by someone before a committee that is part of your legislative

6    history, then I don't want to have the testimony before the

7    committee in writing, as part of an exhibit, and then have the

8    same person come in here and testify before me.

9         MR. GROVE:  Now I understand.  I don't think that we

10   have any duplicative testimony of that type.

11        THE COURT:  Okay.

12        MR. GROVE:  It's more, the sponsor says this is why we

13   did this, in the legislative history.  We're not having any

14   bill sponsors or anything come in here.

15        THE COURT:  Okay.  I'm concerned about duplication.

16        MR. GROVE:  That's not a concern.

17        THE COURT:  Okay.  Good.

18        MR. GROVE:  Rebuttal witnesses, we had some discussion

19   amongst ourselves.  Obviously, it's hard to anticipate whether

20   you need a rebuttal witness.  I want to make sure, do rebuttal

21   witnesses need to be listed on our current witness list?

22        THE COURT:  No.

23        MR. GROVE:  Okay.  So we're not psychic, so I wanted

24   to make sure.

25             It sounds like from what you were saying about

1  managing our own time, that you'll be flexible with this.  We

2  have -- I think both sides have witnesses who are -- for

3  example, we have a surgeon who has a surgery scheduled, and

4  it -- he's only available for a few hours during one day.  Will

5  the Court have some flexibility if we need to fit him in?

6           THE COURT:  I have no concern about who testifies

7  when.  I'm here to listen to what you want to present.  And how

8  you want to coordinate the presentation of evidence is entirely

9  up to you.  It's a good idea to be thoughtful of the people who

10 have schedules that have to be accommodated.

11          MR. GROVE:  Okay.

12          Can I have just a moment?

13          THE COURT:  Sure.

14          MR. GROVE:  There is one more thing, Your Honor.  With

15 respect to the 702 motions, we were very careful to comply with

16 the Court's restrictions on what can be raised and what can't.

17 We have a couple of concerns about whether at least one of

18 those experts has expressed, well, legal opinions.  And I

19 wanted to see if the Court had any interest in entertaining a

20 motion in limine on those.

21          THE COURT:  No.  Because if I think it's a legal

22 opinion, I'll disregard it.

23          MR. GROVE:  Fair enough.

24          That's all for the Government.

25          THE COURT:  Okay.  Thank you.

1    Yes, sir.

2    *MR. COLIN:*  If I may, Your Honor.

3    *THE COURT:*  Uh-huh.

4    *MR. COLIN:*  I apologize for not raising this a few

5    moments ago.

6    One minor procedural question, the due date for the

7    filing of the exhibits, the final exhibit exchange, falls on a

8    Saturday.  So would that move us to March 3, which would be the

9    following Monday?

10    *THE COURT:*  I don't care when you exchange your

11    exhibits.  You need to have them here for trial.

12    *MR. COLIN:*  Understood.

13    *THE COURT:*  And you need to be -- have them in

14    notebooks for Ms. Glover.  So however you're going to do that,

15    please do it.

16    *MR. COLIN:*  All right.

17    *THE COURT:*  It's most helpful if you don't put them in

18    separate notebooks.  It's most helpful if you don't put them in

19    large notebooks.  It's most helpful if you don't put all of

20    them in, only the ones that you really are going to admit.  If

21    you've got other exhibits that you think you might want to

22    admit, you might need to bring them in for rebuttal, or someone

23    says something unexpectedly -- I always call those comfort

24    exhibits -- keep them at counsel table.  We can mark them and

25    insert them when you need to admit them.

 1           But for witnesses and, frankly, for me, trying to

 2    handle large notebooks with lots of exhibits in them, most of

 3    which are not being referred to by a witness, is very

 4    difficult.  If you can put yourselves in the shoes of the

 5    witness and my shoes with regard to those exhibits, we'd be

 6    most appreciative.

 7           MR. COLIN:  Understood.  We'll do that.

 8           THE COURT:  Thank you.

 9           And is anyone going to be relying upon deposition

10    testimony?

11           MR. COLIN:  You anticipated my next question.

12    Actually, it's not really a reliance on deposition testimony in

13    lieu of live testimony, but for one particular witness.  There

14    was an individual named Wagner who was identified as an expert

15    by the defense.  He was converted to a lay witness as the case

16    proceeded, and we had anticipated that the defense would be

17    calling him at trial.  He is not on their witness list.  We

18    have spoken to the defense.  They have an objection --

19    potential objection to the relevance of this testimony.  But

20    the bottom line is, the only purpose for calling him as a live

21    witness would be to introduce a couple of very brief excerpts

22    or recite a couple of very brief areas from his deposition,

23    less than a page apiece.

24           We, I think, have reached a tentative agreement, with

25    the Court's permission, in lieu of calling this witness as a

1   live witness.  We would simply offer these two excerpts,

2   subject, however to Mr. Grove and the defendant's objection to

3   relevance.

4        Would that be a procedure that would be acceptable to

5   the Court?

6        THE COURT:  With regard to deposition testimony, it

7   requires a reader.  I'm not going to take depositions back to

8   chambers and read them.  So if you plan on and agree to use

9   deposition testimony, you need somebody here to read the

10  deposition.  It's up to you to decide whether or not you think

11  that deposition testimony is admissible or you can agree to use

12  it.  I'm not going to tell you what to do on that.  That's

13  something that you all can work out.

14       MR. COLIN:  Understood.  Okay.  That was my question.

15  Thank you, Your Honor.

16       THE COURT:  Okay.

17       MR. GROVE:  One more issue.  I think both sides have

18  witnesses who are in wheelchairs.  I don't know if that's going

19  to be an issue, if the Court needs to know about in advance.

20       THE COURT:  Appreciate you letting us know.  We have

21  the ability to accommodate wheelchairs.  I would suggest that,

22  counsel, you not sit on both sides of the table, where you move

23  your seats when you have someone who is going to be testifying

24  by wheelchair.  There is an extension that extends from the

25  witness box to allow a person to sit there in a wheelchair, so

 1  │ that's not a difficulty.

 2  │        Any other accommodations we need to make, any

 3  │ accommodations for hearing, sight, things like that?

 4  │        *MR. KOPEL:*  Not from the plaintiffs, Your Honor.

 5  │        *MR. GROVE:*  No, Your Honor.

 6  │        *THE COURT:*  Okay.  Any other questions you have about

 7  │ the trial process that you would like to get resolved at this

 8  │ point?

 9  │        *MR. GROVE:*  I know these courts are technologically

10  │ advanced.

11  │        *THE COURT:*  Used to be.

12  │        *MR. GROVE:*  Would it be -- would it be possible to

13  │ schedule a time with court staff to come in and figure out what

14  │ we can do?

15  │        *THE COURT:*  That's a good idea.  You can talk with

16  │ Ms. Glover.  You make the appointment with her.  Don't send

17  │ your paralegals.  Come yourself.

18  │        Anybody else?  Any other questions?

19  │        Okay.  This promises to be an interesting trial.  I'll

20  │ look forward to seeing you on the first day of trial.  We will

21  │ start at 8:30 a.m. that first morning.  And I ask you to be

22  │ sure that everything's ready to roll so we can make the best

23  │ use of our time beginning that day and each day thereafter.

24  │        You've got a little bit of time for filing briefs, and

25  │ you can expect that I will have reviewed your briefs and also

1 │ all of your 702 objections, categorizing as to each witness

2 │ what your objections are.

3 │         Thank you very much.  We'll stand in recess.

4 │         (Recess at 3:37 p.m.)

5 │                     REPORTER'S CERTIFICATE

6 │

7 │     I certify that the foregoing is a correct transcript from
    │ the record of proceedings in the above-entitled matter.

8 │

9 │     Dated at Denver, Colorado, this 30th day of September,

10 │ 2014.

11 │                             s/Therese Lindblom

12 │                     _____

13 │                     Therese Lindblom,CSR,RMR,CRR

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │