HB1229_C.001                                    NOT AMENDED

## HOUSE COMMITTEE OF REFERENCE REPORT

_____          February 12, 2013
Chairman of Committee                    Date

Committee on Judiciary.

After consideration on the merits, the Committee recommends the following:

HB13-1229   be referred favorably to the Committee on Appropriations.


** *** ** *** **


\*HB1229_C.001\*


EXHIBIT
144
tabbies
5576

HB1229_J.004

HOUSE COMMITTEE OF REFERENCE REPORT

_____    February 14, 2013
Chairman of Committee    Date

Committee on <u>Appropriations</u>.

After consideration on the merits, the Committee recommends the
following:

<u>HB13-1229</u>  be amended as follows, and as so amended, be referred to
the Committee of the Whole with favorable
recommendation:

1    Amend printed bill, page 13, after line 24 insert:

2    "**SECTION 9. Appropriation.** (1) In addition to any other
3    appropriation, there is hereby appropriated, out of any moneys in the
4    general fund not otherwise appropriated, to the department of public
5    safety, for the fiscal year beginning July 1, 2013, the sum of $1,612,006
6    and 27.4 FTE, or so much thereof as may be necessary, to be allocated for
7    the implementation of this act as follows:
8        (a) $360,288 for the executive director's office; and
9        (b) $1,251,718 and 27.4 FTE for the state point of contact-national
10        instant criminal background check program.
11    **SECTION 10. Appropriation.** (1) In addition to any other
12    appropriation, there is hereby appropriated, out of any moneys in the
13    instant criminal background check cash fund created in section 24-33.5-
14    424 (3.5) (b), Colorado Revised Statutes, not otherwise appropriated, to
15    the department of public safety, for the fiscal year beginning July 1, 2013,
16    the sum of $1,612,006 and 27.4 FTE, or so much thereof as may be
17    necessary, to be allocated for the implementation of this act as follows:
18        (a) $360,288 for the executive director's office; and
19        (b) $1,251,718 and 27.4 FTE for the state point of contact-national
20        instant criminal background check program.".

21    Page 13, strike line 25 and substitute:

**\*HB1229_J.004\***    5577

1       "**SECTION 11. Effective Date.** This act takes effect July 1, 2013;
2    except that section 9 of this act takes effect only if House Bill 13-1228
3    does not become law, and section 10 of this act takes effect only if House
4    Bill 13-1228 becomes law.".

5    Renumber succeeding section accordingly.

6    Page 1, line 102, strike "**FIREARM.**" and substitute "**FIREARM, AND, IN**
7    **CONNECTION THEREWITH, MAKING AN APPROPRIATION.**".

** *** ** *** **

HB1229_C.002

## SENATE COMMITTEE OF REFERENCE REPORT

_____        March 4, 2013
Chairman of Committee                    Date

Committee on State, Veterans, & Military Affairs.

After consideration on the merits, the Committee recommends the following:

HB13-1229  be amended as follows, and as so amended, be referred to the Committee on Appropriations with favorable recommendation:

1   Amend reengrossed bill, page 3, line 5, strike "**penalty.**" and substitute
2   "**penalty - definitions.**".

3   Page 3, line 5, after "(1)" insert "(a)".

4   Page 3, line 9, strike "(a)" and substitute "(I)".

5   Page 3, line 12, strike "(b)" and substitute "(II)".

6   Page 3, after line 14 insert:

7        "(b)  AS USED IN THIS SECTION, UNLESS THE CONTEXT REQUIRES
8   OTHERWISE, "TRANSFEREE" MEANS A PERSON WHO DESIRES TO RECEIVE OR
9   ACQUIRE A FIREARM FROM A TRANSFEROR. IF A TRANSFEREE IS NOT A
10  NATURAL PERSON BUT A CORPORATION, ASSOCIATION, PARTNERSHIP, OR
11  LIMITED LIABILITY COMPANY OR TRUST, THE REQUIREMENT DESCRIBED IN
12  THIS SUBSECTION (1) SHALL BE INTERPRETED TO REQUIRE A BACKGROUND
13  CHECK OF EACH MEMBER, PARTNER, OFFICER, OR OTHER PERSON WHO
14  HOLDS A BENEFICIAL INTEREST IN THE CORPORATION, ASSOCIATION,
15  PARTNERSHIP, OR LIMITED LIABILITY COMPANY OR TRUST.".

16  Page 4, line 2, after "TRANSFEROR" insert "AND TRANSFEREE".

17  Page 5, strike lines 3 through 6 and substitute:

5579

*HB1229_C.002*

1    "(b)  A TRANSFER THAT IS A BONA FIDE GIFT BETWEEN IMMEDIATE
2    FAMILY MEMBERS, WHICH ARE LIMITED TO SPOUSES, PARENTS, CHILDREN,
3    SIBLINGS, GRANDPARENTS, GRANDCHILDREN, NIECES, NEPHEWS, FIRST
4    COUSINS, AUNTS, AND UNCLES;".

5    Page 6, line 7, strike "OR".

6    Page 6, strike line 11 and substitute:

7    "A RESULT OF THE TRANSFER MAY LEGALLY POSSESS A FIREARM; OR
8            (g)  ANY TEMPORARY TRANSFER THAT OCCURS WHILE IN THE
9    CONTINUOUS PRESENCE OF THE OWNER OF THE FIREARM; OR
10           (h)  A TEMPORARY TRANSFER FOR NOT MORE THAN SEVENTY-TWO
11   HOURS.  A PERSON WHO TRANSFERS A FIREARM PURSUANT TO THIS
12   PARAGRAPH (h) MAY BE JOINTLY AND SEVERALLY LIABLE FOR DAMAGES
13   PROXIMATELY CAUSED BY THE TRANSFEREE'S SUBSEQUENT USE OF THE
14   FIREARM.
15           (7)  NOTHING IN SUBSECTION (6) OF THIS SECTION SHALL BE
16   INTERPRETED TO LIMIT OR OTHERWISE ALTER THE APPLICABILITY OF
17   SECTION 18-12-111 CONCERNING THE UNLAWFUL PURCHASE OR TRANSFER
18   OF FIREARMS.".

19   Renumber succeeding subsection accordingly.

20   Page 6, line 18, strike "CLERK OF THE COURT" and substitute "STATE
21   COURT ADMINISTRATOR".

22   Page 6, strike lines 26 and 27 and substitute:

23           "**SECTION 2.**  In Colorado Revised Statutes, 13-5-142, **amend**
24   (1) introductory portion, (2), (3) introductory portion, (3) (a), and (3) (b)
25   (II); and **add** (1.5) and (4) as follows:
26           **13-5-142.  National instant criminal background check system**
27   **- reporting.** (1) Beginning July 1, 2002 ON AND AFTER THE EFFECTIVE
28   DATE OF THIS SECTION, the clerk of the court of every judicial district in
29   the state COURT ADMINISTRATOR shall periodically report SEND
30   ELECTRONICALLY the following information to the national instant
31   criminal background check system created by the federal "Brady
32   Handgun Violence Prevention Act" (Pub.L. 103-159), the relevant portion
33   of which is codified at 18 U.S.C. sec. 922 (t) COLORADO BUREAU OF
34   INVESTIGATION CREATED PURSUANT TO SECTION 24-33.5-401, C.R.S.,
35   REFERRED TO WITHIN THIS SECTION AS THE "BUREAU":

5580

1        (1.5) NOT MORE THAN FORTY-EIGHT HOURS AFTER RECEIVING
2  NOTIFICATION OF A PERSON WHO SATISFIES THE DESCRIPTION IN
3  PARAGRAPH (a), (b), OR (c) OF SUBSECTION (1) OF THIS SECTION, THE
4  STATE COURT ADMINISTRATOR SHALL REPORT SUCH FACT TO THE BUREAU.
5        (2) Any report made by the ~~clerk of the court of every judicial~~
6  ~~district in the~~ state COURT ADMINISTRATOR pursuant to this section shall
7  describe the reason for the report and indicate that the report is made in
8  accordance with 18 U.S.C. sec. 922 (g) (4).
9        (3) The ~~clerk of the court of every judicial district in the~~ state
10  COURT ADMINISTRATOR shall take all necessary steps to cancel a record
11  made by ~~that clerk~~ THE STATE COURT ADMINISTRATOR in the national
12  instant criminal background check system if:
13        (a) The person to whom the record pertains makes a written
14  request to the ~~clerk~~ STATE COURT ADMINISTRATOR; and
15        (b) No less than three years before the date of the written request:
16        (II) The period of commitment of the most recent order of
17  commitment or recommitment expired, or ~~the~~ A court entered an order
18  terminating the person's incapacity or discharging the person from
19  commitment in the nature of habeas corpus, if the record in the national
20  instant criminal background check system is based on an order of
21  commitment to the custody of the unit in the department of human
22  services that administers behavioral health programs and services,
23  including those related to mental health and substance abuse; except that
24  the ~~clerk~~ STATE COURT ADMINISTRATOR shall not cancel any record
25  pertaining to a person with respect to whom two recommitment orders
26  have been entered under section 27-81-112 (7) and (8), C.R.S., or who
27  was discharged from treatment under section 27-81-112 (11), C.R.S., on
28  the grounds that further treatment will not be likely to bring about
29  significant improvement in the person's condition; or".

30  Page 7, strike lines 1 through 9.

31  Page 7, line 13, strike "CLERK OF THE COURT" and substitute "STATE
32  COURT ADMINISTRATOR".

33  Page 10, strike lines 3 through 16 and substitute:

34        "(III) IN REVIEWING A DENIAL, THE COURT OF APPEALS HAS
35  DISCRETION, BUT IS NOT REQUIRED, TO RECEIVE ADDITIONAL EVIDENCE
36  NECESSARY TO CONDUCT AN ADEQUATE REVIEW.

1      **SECTION 4.** In Colorado Revised Statutes, 13-9-123, **amend** (1)
2    introductory portion, (2), (3) introductory portion, (3) (a), and (3) (b) (II);
3    and **add** (1.5) and (4) as follows:
4      **13-9-123. National instant criminal background check system**
5    **- reporting. (1)** ~~Beginning July 1, 2002~~ ON AND AFTER THE EFFECTIVE
6    DATE OF THIS SECTION, the ~~clerk of the probate court~~ STATE COURT
7    ADMINISTRATOR shall ~~periodically report~~ SEND ELECTRONICALLY the
8    following information to the ~~national instant criminal background check~~
9    ~~system created by the federal "Brady Handgun Violence Prevention Act",~~
10    ~~Pub.L. 103-159, the relevant portion of which is codified at 18 U.S.C.~~
11    ~~sec. 922 (t)~~ COLORADO BUREAU OF INVESTIGATION CREATED PURSUANT
12    TO SECTION 24-33.5-401, C.R.S., REFERRED TO WITHIN THIS SECTION AS
13    THE "BUREAU":
14      (1.5) NOT MORE THAN FORTY-EIGHT HOURS AFTER RECEIVING
15    NOTIFICATION OF A PERSON WHO SATISFIES THE DESCRIPTION IN
16    PARAGRAPH (a), (b), OR (c) OF SUBSECTION (1) OF THIS SECTION, THE
17    STATE COURT ADMINISTRATOR SHALL REPORT SUCH FACT TO THE BUREAU.
18      (2) Any report made by the ~~clerk of the probate court~~ STATE
19    COURT ADMINISTRATOR pursuant to this section shall describe the reason
20    for the report and indicate that the report is made in accordance with 18
21    U.S.C. sec. 922 (g) (4).
22      (3) The ~~clerk of the probate court~~ STATE COURT ADMINISTRATOR
23    shall take all necessary steps to cancel a record made by ~~that clerk~~ THE
24    STATE COURT ADMINISTRATOR in the national instant criminal background
25    check system if:
26      (a) The person to whom the record pertains makes a written
27    request to the ~~clerk~~ STATE COURT ADMINISTRATOR; and
28      (b) No less than three years before the date of the written request:
29      (II) The period of commitment of the most recent order of
30    commitment or recommitment expired, or the court entered an order
31    terminating the person's incapacity or discharging the person from
32    commitment in the nature of habeas corpus, if the record in the national
33    instant criminal background check system is based on an order of
34    commitment to the custody of the unit in the department of human
35    services that administers behavioral health programs and services,
36    including those related to mental health and substance abuse; except that
37    the ~~clerk~~ STATE COURT ADMINISTRATOR shall not cancel any record
38    pertaining to a person with respect to whom two recommitment orders
39    have been entered under section 27-81-112 (7) and (8), C.R.S., or who
40    was discharged from treatment under section 27-81-112 (11), C.R.S., on

5582

1   the grounds that further treatment will not be likely to bring about
2   significant improvement in the person's condition; or".

3   Page 10, line 20, strike "CLERK OF THE COURT" and substitute "STATE
4   COURT ADMINISTRATOR".

5   Page 13, strike lines 10 through 12 and substitute:

6        "(III)  IN REVIEWING A DENIAL, THE COURT OF APPEALS HAS
7   DISCRETION, BUT IS NOT REQUIRED, TO RECEIVE ADDITIONAL EVIDENCE
8   NECESSARY TO CONDUCT AN ADEQUATE REVIEW.".

** *** ** *** **

5583

*HB1229_C.002*       -5-

HB1229_J.008

## SENATE COMMITTEE OF REFERENCE REPORT

_____          March 6, 2013_____
Chairman of Committee                Date

Committee on Appropriations.

After consideration on the merits, the Committee recommends the following:

HB13-1229   be amended as follows, and as so amended, be referred to the Committee of the Whole with favorable recommendation:

1    Amend reengrossed bill, page 3, after line 5, strike "EXCEPT" and
2    substitute "ON AND AFTER JULY 1, 2013, EXCEPT".

3    Page 14, strike lines 5 through 27.

4    Page 15, strike line 1 and substitute:

*HB1229_J.008*                                          5584

| | | | APPROPRIATION FROM | | | | |
|---|---|---|---|---|---|---|---|
| | ITEM & SUBTOTAL | TOTAL | GENERAL FUND | GENERAL FUND EXEMPT | CASH FUNDS | REAPPROPRIATED FUNDS | FEDERAL FUNDS |
| | $ | $ | $ | $ | $ | $ | $ |

1       "**SECTION 9. Appropriation to the department of public safety for the fiscal year beginning July 1, 2012.** In Session Laws of Colorado 2012, section 2 of chapter 305,
2   (HB 12-1335), amend Part XVII (1) (A), (5) (D), and the affected totals as amended by section 1 Senate Bill 13-101, as follows:

4       Section 2. **Appropriation.**

5                                  **PART XVII**
6                         **DEPARTMENT OF PUBLIC SAFETY**

8   **(1) EXECUTIVE DIRECTOR'S OFFICE**
9   **(A) Administration**

| | ITEM & SUBTOTAL | TOTAL | GENERAL FUND | GENERAL FUND EXEMPT | CASH FUNDS | REAPPROPRIATED FUNDS | FEDERAL FUNDS |
|---|---|---|---|---|---|---|---|
| 10 Personal Services | 2,269,953 | | | | | 2,269,953[a] | |
| 11 | | | | | | (27.7 FTE) | |
| 12 Health, Life, and Dental | ~~9,672,220~~ | | ~~1,576,210~~ | | 6,929,526[b] | 674,902[c] | 491,582(I) |
| 13 | 9,699,820 | | 1,603,810 | | | | |
| 14 Short-term Disability | ~~148,142~~ | | ~~27,698~~ | | 102,625[b] | 12,338[c] | 5,481(I) |
| 15 | 148,436 | | 27,992 | | | | |
| 16 S.B. 04-257 Amortization | ~~2,673,401~~ | | ~~495,541~~ | | 1,856,708[b] | 222,071[c] | 99,081(I) |
| 17 | 2,678,987 | | 501,127 | | | | |
| 18 S.B. 06-235 Supplemental | ~~2,295,550~~ | | ~~423,817~~ | | 1,599,803[b] | 186,783[c] | 85,147(I) |
| 19 | 2,300,550 | | 428,817 | | | | |
| 20 Shift Differential | 320,607 | | 67,963 | | 221,871[b] | 30,773[c] | |
| 21 Workers' Compensation | 2,827,657 | | | | 265,336[b] | 2,562,321[a] | |
| 22 Operating Expenses | 151,046 | | | | | 151,046[a] | |
| 23 Legal Services for 4,524 | 349,441 | | 78,945 | | 103,404[b] | 167,092[a] | |
| 24 Purchase of Services from | 2,504,611 | | 978,611 | | 1,361,675[b] | 164,325[a] | |
| 25 Multiuse Network | 1,986,110 | | 1,486,029 | | 337,638[d] | 162,443[a] | |
| 26 Management and | 261,189 | | | | 85,395[d] | 175,794[a] | |
| 27 Payment to Risk | 1,177,817 | | 177,192 | | 195,240[d] | 805,385[a] | |

**\*HB1229_J.008\***

| | ITEM & SUBTOTAL | TOTAL | GENERAL FUND | GENERAL FUND EXEMPT | CASH FUNDS | REAPPROPRIATED FUNDS | FEDERAL FUNDS |
|---|---|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ | $ | $ |
| 1 Vehicle Lease Payments | 80,076 | | 22,698 | | 29,437[e] | 27,941[f] | |
| 2 Leased Space | ~~1,907,259~~ | | ~~858,230~~ | | 494,386[b] | 554,643[f] | |
| 3 | 1,937,259 | | 888,230 | | | | |
| 4 Capitol Complex Leased | 1,263,475 | | 16,890 | | 462,435[g] | 784,150[h] | |
| 5 Communication Services | 652,003 | | | | 593,137[g] | 49,123[h] | 9,743(I) |
| 6 COFRS Modernization | 168,478 | | 52,658 | | 81,603[g] | 34,217[h] | |
| 7 Utilities | 87,407 | | | | 85,907[d] | 1,500[i] | |
| 8 Distributions to Local | 50,000 | | | | 50,000[j] | | |
| 9 | ~~30,846,142~~ | | | | | | |
| 10 | 30,914,922 | | | | | | |

[a] Of these amounts, $5,347,958 shall be from departmental indirect cost recoveries and $1,110,401 shall be from statewide indirect cost recoveries.

[b] Of these amounts, $12,221,914 shall be from the Highway Users Tax Fund created in Section 43-4-201 (1) (a), C.R.S., and $1,051,058 shall be from various sources of cash funds.

[c] Of these amounts, $323,498 shall be from departmental indirect cost recoveries, $80,440 shall be from other state agencies for dispatch services, $74,361 shall be from the Department

[d] These amounts shall be from the Highway Users Tax Fund created in Section 43-4-201 (1) (a), C.R.S.

[e] This amount shall be from various sources of cash funds.

[f] Of these amounts, $544,118 shall be from departmental indirect cost recoveries and $38,466 shall be from Limited Gaming funds appropriated to the Department of Revenue.

[g] Of these amounts, $1,075,163 shall be from the Highway Users Tax Fund created in Section 43-4-201 (1) (a), C.R.S., and $62,012 shall be from various sources of cash funds.

[h] Of these amounts, $826,313 shall be from departmental indirect cost recoveries and $41,177 shall be from various sources of reappropriated funds.

[i] This amount shall be from Limited Gaming funds appropriated to the Department of Revenue.

[j] This amount shall be from the Hazardous Materials Safety Fund created in Section 42-20-107 (1), C.R.S.

| | | ~~32,763,273~~ | | | | |
| | | 32,831,753 | | | | |

(5) COLORADO BUREAU OF INVESTIGATION[1]

*HB1229_J.008*                -3-

|  | | APPROPRIATION FROM | | | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | ITEM &<br>SUBTOTAL | TOTAL | GENERAL<br>FUND | GENERAL<br>FUND<br>EXEMPT | CASH<br>FUNDS | REAPPROPRIATED<br>FUNDS | FEDERAL<br>FUNDS |
|  | $ | $ | $ | $ | $ | $ | $ |

1  **(D) State Point of Contact - National Instant Criminal Background Check Program**
2  Personal Services                      1,312,023                    1,086,212                 225,811[a]
3                                          1,484,477                    1,258,666
4                                                                       (22.0 FTE)                 (4.4 FTE)
5                                                                       (26.0 FTE)
6  Operating Expenses                        361,248                      300,744                   60,504[a]
7                                             482,781                      422,277
8                                           1,673,271
9                                           1,967,258
10
11                                                     29,019,641
12                                                     29,313,628
13
14  [a] These amounts shall be from permit application fees collected pursuant to Section 18-12-205 (2) (b), C.R.S.
15
16  **TOTALS PART XVII**
17  **(PUBLIC SAFETY)**              $273,982,783      $84,338,122               $136,496,137[a]    $25,083,490    $28,065,034[b]
18                                   $274,345,250      $84,700,589
19
20  [a] Of this amount, $105,755,507 is from the Highway Users Tax Fund pursuant to Section 43-4-201 (3) (a) (III) (C), C.R.S.
21  [b] This amount contains an (I) notation.

**\*HB1229_J.008\***                          -4-

1    **SECTION 10. Appropriation.** (1) In addition to any other
2    appropriation, there is hereby appropriated, out of any moneys in the
3    general fund not otherwise appropriated, to the department of public
4    safety, for the fiscal year beginning July 1, 2013, the sum of $1,415,932
5    and 24.7 FTE, or so much thereof as may be necessary, to be allocated for
6    the implementation of this act as follows:
7          (a) $324,806 for the executive director's office;
8          (b) $80,000 for the Colorado crime information center; and
9          (c) $1,011,126 and 24.7 FTE for the state point of contact-national
10         instant criminal background check program.
11   **SECTION 11. Appropriation.** (1) In addition to any other
12   appropriation, there is hereby appropriated, out of any moneys in the
13   instant criminal background check cash fund created in section 24-33.5-
14   424 (3.5) (b), Colorado Revised Statutes, not otherwise appropriated, to
15   the department of public safety, for the fiscal year beginning July 1, 2013,
16   the sum of   $1,415,932 and 24.7 FTE, or so much thereof as may be
17   necessary, to be allocated for the implementation of this act as follows:
18         (a) $324,806 for the executive director's office;
19         (b) $80,000 for the Colorado crime information center; and
20         (c) $1,011,126 and 24.7 FTE for the state point of contact-national
21         instant criminal background check program.
22   **SECTION 12. Effective Date.** This act takes effect upon passage;
23   except that section 10 of this act takes effect only if House Bill 13-1228
24   does not become law, and section 11 of this act takes effect only if House
25   Bill 13-1228 becomes law.".

26   Renumber succeeding section accordingly.

** *** ** *** **

**\*HB1229_J.008\***          -5-

5588

**HB13-1224**

*Colorado Legislative Council Staff Fiscal Note*

# STATE and LOCAL
# FISCAL IMPACT

| | |
|---|---|
| **Drafting Number:** LLS 13-0810 | **Date:** February 11, 2013 |
| **Prime Sponsor(s):** Rep. Fields | **Bill Status:** House Judiciary |
| Sen. Hodge | **Fiscal Analyst:** Kerry White (303-866-3469) |

**TITLE:**     CONCERNING PROHIBITING LARGE-CAPACITY AMMUNITION MAGAZINES.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 | FY 2015-16 |
|---|---|---|---|
| **State Revenue**<br>Cash Funds<br>  Fines Collection Cash Fund | <$5,000 | <$5,000 | <$5,000 |
| **State Expenditures**<br>General Fund | | | $19,983 |
| **FTE Position Change** | | | |
| **Effective Date:** July 1, 2013. | | | |
| **Appropriation Summary for FY 2013-2014:** None required. | | | |
| **Local Government Impact:** See Local Government Impact section. | | | |

**Note: While all agencies were canvassed for the purposes of this fiscal note, not all agencies were able to respond with complete information. Therefore, this fiscal note should be considered preliminary. It will be updated if additional information becomes available.**

## Summary of Legislation

This bill establishes limitations on large-capacity ammunition magazines, which are defined as those that can accept more than ten rounds of ammunition or five shotgun shells.

***Prohibition of the sales, transfer, or possession of large-capacity magazines.*** Beginning on July 1, 2013, the following actions are subject to criminal penalties:

- sales, transfer, or possession of a large-capacity magazine is a class 2 misdemeanor;
- second and future violations of the prohibition of the sale, transfer, or possession of a large-capacity magazine is a class 1 misdemeanor; and
- use of a large-capacity magazine in the commission of a felony or crime of violence is a class 6 felony.

The prohibition against the transfer or possession of large-capacity magazines does not apply to law enforcement personnel. Those who maintained continuous possession of the magazine prior to the bill's effective date are allowed to retain ownership, and the prosecution has the burden of proof if a person asserts he or she owns the magazine legally.


EXHIBIT
5589

**HB13-1224**

*Manufacturers.* As of July 1, 2013, a magazine manufactured in Colorado must have the serial number and the date of manufacture engraved or cast upon its outer surface. Failure to do so is a class 2 misdemeanor. The Department of Public Safety is authorized to promulgate rules to enforce this provision.

## State Revenue

Beginning in FY 2013-14, this bill will increase state cash fund revenue by less than $5,000 per year, credited to the Fines Collection Cash Fund in the Judicial Department. By adding two class 2 misdemeanor, one class 1 misdemeanor, and one class 6 felony, individuals convicted of these crimes may be required to pay a fine. Under current law, fine penalties are $1,000 to $1,000 for a class 6 felony; $500 to $5,000 for a class 1 misdemeanor; and $250 to $1,000 for a class 2 misdemeanor. To the extent that this court imposes fines on persons convicted under this bill, state revenue will increase.

## State Expenditures

Overall, this bill will increase state expenditures as discussed below.

*Judicial Department.* This bill creates three new misdemeanors and one new felony charge related to large-capacity ammunition magazines. Because existing owners are grandfathered in and gun owners and dealers will be prohibited from selling or transferring existing magazines, this analysis assumes that new case filings will be minimal. Court and probation costs are, therefore, anticipated to be addressed within existing appropriations.

*Office of the State Public Defender (OSPD).* The OSPD may experience an increase in workload due to new case filings and increases in the time to litigate cases. The number of case filings associated with crimes created under the bill is expected to be low and not require an increase in appropriations.

*Department of Public Safety.* The Department of Public Safety is authorized to promulgate rules concerning the requirements to engrave or cast serial numbers and the date of manufacture on magazines. This cost can be absorbed within existing appropriations.

*Department of Corrections.* Under House Bill 13-1224, the use of a large-capacity magazine in the commission of a felony or crime of violence is a class 6 felony. As of this writing, it is unknown how many offenders for these types of crimes have used a large-capacity magazine. This analysis assumes that most offenders sentenced for a felony or crime of violence will already be going to prison and, in most cases, will serve their sentence for the class 6 felony penalty included under the bill concurrent with the sentence for the original crime. However, the fiscal note assumes one offender every five years will be required to serve the sentence for the class 6 felony under this bill consecutively. This results in an increase in costs of $19,983 every five years. The impact is shown in the third year to account for a one-year delay in prosecution and a minimum of one-year sentence for any other felony. However, it is possible that this impact may not be seen until several years later.

**HB13-1224**

Current law prohibits the General Assembly from passing any bill to increase periods of imprisonment in state correctional facilities without appropriating an amount sufficient to cover the increased capital construction and operating costs of the bill in each of the first five fiscal years. However, current law also allows the DOC to place offenders classified as medium custody and below in private contract prisons, for which no state capital construction costs are incurred.

Offenders sentenced under this bill to DOC may be placed in either a state-run or a private contract prison, depending on several factors. Any offenders that *must* be housed in a state-run prison will likely require a shift of other inmates in that facility to private contract prisons. Therefore, this fiscal note assumes that the impact of this bill will be accommodated through the use of private contract prisons, and that no new capital construction funds are necessary.

Offenders placed in a private contract prison cost the state about $57.03 per offender per day, including the current daily rate of $52.69 and an estimated $4.34 per offender per day for medical care provided by the DOC. Table 1 shows the estimated cost of the bill over the next five fiscal years.

| Table 1. Five-Year Fiscal Impact On Correctional Facilities | | | | |
|---|---|---|---|---|
| Fiscal Year | Inmate Bed Impact | Construction Cost | Operating Cost | Total Cost |
| FY 2013-14 | 0.0 | $0 | $0 | $0 |
| FY 2014-15 | 1.0 | 0 | 0 | 0 |
| FY 2015-16 | 0.0 | 0 | 19,983 | 19,983 |
| FY 2016-17 | 0.0 | 0 | 0 | 0 |
| FY 2017-18 | 0.0 | 0 | 0 | 0 |
| Total | | $0 | $19,983 | $19,983 |

**Local Government Impact**

This bill will affect local governments in two ways: it could increase the use of county jails and workload related to investigating and prosecuting the new offenses, as described below.

This bill creates three new crimes: two class 2 misdemeanors and one class 1 misdemeanor. The penalty for a class 2 misdemeanor is 3 to 12 months in a county jail, a fine of $250 to $1,000, or both. The penalty for a class 1 misdemeanor is 6 to 18 months in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. For the current fiscal year, the state reimburses county jails at a daily rate of $50.44 to house state inmates. The bill also impacts local governments (police departments, sheriff offices, and district attorneys) by requiring them to investigate and prosecute offenses under the bill. These costs are anticipated to be minimal.

Page 4                                                                                              **HB13-1224**
February 11, 2013

## Comparable Crime

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1224 adds four new crimes. As of this writing, no information about the prevalence of these crimes is available and under current law. However, current law provides penalties for the use of a weapon in the commission of a crime. For example, possession of an illegal weapon is a class 1 misdemeanor, although subsequent offenses within five years or for certain offenders are a class 5 felony. Prohibited use of weapons is a class 2 misdemeanor and an unlawful purchase of firearms is a class 4 felony. In addition, within the City and County of Denver only there is a prohibition against magazines with capacity for more than 21 bullets.

## Departments Contacted

| | | |
|---|---|---|
| Corrections | Counties | Judicial |
| Local Affairs | Municipalities | Public Safety |

**HB13-1224**

*Colorado Legislative Council Staff Fiscal Note*

# STATE and LOCAL
# REVISED FISCAL IMPACT

(replaces fiscal note dated February 11, 2013)

| | |
|---|---|
| **Drafting Number:** LLS 13-0810 | **Date:** February 27, 2013 |
| **Prime Sponsor(s):** Rep. Fields | **Bill Status:** Senate Judiciary |
| Sen. Hodge | **Fiscal Analyst:** Kerry White (303-866-3469) |

**TITLE:**       CONCERNING PROHIBITING LARGE-CAPACITY AMMUNITION MAGAZINES.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 | FY 2015-16 |
|---|---|---|---|
| **State Revenue**<br>Cash Funds<br>    Fines Collection Cash Fund | <$5,000 | <$5,000 | <$5,000 |
| **State Expenditures**<br>General Fund | | | $19,983 |
| **FTE Position Change** | | | |
| **Effective Date:** July 1, 2013. | | | |
| **Appropriation Summary for FY 2013-2014:** See State Appropriations section. | | | |
| **Local Government Impact:** See Local Government Impact section. | | | |

## Summary of Legislation

This *reengrossed* bill establishes limitations on large-capacity ammunition magazines, which are defined as those that can accept more than 15 rounds of ammunition or 8 shotgun shells.

*Prohibition of the sales, transfer, or possession of large-capacity magazines.* Beginning on July 1, 2013, the following actions are subject to criminal penalties:

- sales, transfer, or possession of a large-capacity magazine is a class 2 misdemeanor;
- second and future violations of the prohibition of the sale, transfer, or possession of a large-capacity magazine is a class 1 misdemeanor; and
- use of a large-capacity magazine in the commission of a felony or crime of violence is a class 6 felony.

The prohibition against the transfer or possession of these magazines does not apply to:

- law enforcement personnel;
- an employee engaged in his or her official duties;
- members of the armed forces;
- the state or its political subdivisions;
- a firearms retailer for the purposes of sales outside of Colorado;

5593

**HB13-1224**

- an out-of-state transferee who is legally allowed to possess the magazine; or
- a person who possesses the magazine to transport it to an out-of-state entity on behalf of any of the parties listed above.

Those who maintained continuous possession of the magazine prior to the bill's effective date are allowed to retain ownership, and the prosecution has the burden of proof if a person asserts he or she owns the magazine legally.

*Manufacturers.* As of July 1, 2013, a magazine manufactured in Colorado must have the serial number and the date of manufacture engraved or cast upon its outer surface. Failure to do so is a class 2 misdemeanor. The Department of Public Safety is authorized to promulgate rules to enforce this provision.

## State Revenue

Beginning in FY 2013-14, this bill will increase state cash fund revenue by less than $5,000 per year, credited to the Fines Collection Cash Fund in the Judicial Department. By adding two class 2 misdemeanors, one class 1 misdemeanor, and one class 6 felony, individuals convicted of these crimes may be required to pay a fine. Under current law, fine penalties are $1,000 to $1,000 for a class 6 felony; $500 to $5,000 for a class 1 misdemeanor; and $250 to $1,000 for a class 2 misdemeanor. To the extent that this court imposes fines on persons convicted under this bill, state revenue will increase.

## State Expenditures

Overall, this bill will increase state expenditures as discussed below.

*Judicial Department.* This bill creates three new misdemeanors and one new felony charge related to large-capacity ammunition magazines. Because existing owners are grandfathered in and gun owners and dealers will be prohibited from selling or transferring existing magazines, this analysis assumes that new case filings will be minimal. Court and probation costs are, therefore, anticipated to be addressed within existing appropriations.

*Office of the State Public Defender (OSPD).* The OSPD may experience an increase in workload due to new case filings and increases in the time to litigate cases. The number of case filings associated with crimes created under the bill is expected to be low and not require an increase in appropriations.

*Department of Public Safety.* The Department of Public Safety is authorized to promulgate rules concerning the requirements to engrave or cast serial numbers and the date of manufacture on magazines. This cost can be absorbed within existing appropriations.

Page 3                                                                              **HB13-1224**
February 27, 2013

    ***Department of Corrections.*** Under House Bill 13-1224, the use of a large-capacity magazine
in the commission of a felony or crime of violence is a class 6 felony. As of this writing, it is
unknown how many offenders for these types of crimes have used a large-capacity magazine. This
analysis assumes that most offenders sentenced for a felony or crime of violence will already be
going to prison and, in most cases, will serve their sentence for the class 6 felony penalty included
under the bill concurrent with the sentence for the original crime. However, the fiscal note assumes
one offender every five years will be required to serve the sentence for the class 6 felony under this
bill consecutively. This results in an increase in costs of $19,983 every five years. The impact is
shown in the third year to account for a one-year delay in prosecution and a minimum of one-year
sentence for any other felony. However, it is possible that this impact may not be seen until several
years later.

    Current law prohibits the General Assembly from passing any bill to increase periods of
imprisonment in state correctional facilities without appropriating an amount sufficient to cover the
increased capital construction and operating costs of the bill in each of the first five fiscal years.
However, current law also allows the DOC to place offenders classified as medium custody and
below in private contract prisons, for which no state capital construction costs are incurred.

    Offenders sentenced under this bill to DOC may be placed in either a state-run or a private
contract prison, depending on several factors. Any offenders that *must* be housed in a state-run
prison will likely require a shift of other inmates in that facility to private contract prisons.
Therefore, this fiscal note assumes that the impact of this bill will be accommodated through the use
of private contract prisons, and that no new capital construction funds are necessary.

    Offenders placed in a private contract prison cost the state about $57.03 per offender per day,
including the current daily rate of $52.69 and an estimated $4.34 per offender per day for medical
care provided by the DOC. Table 1 shows the estimated cost of the bill over the next five fiscal
years.

| Table 1. Five-Year Fiscal Impact On Correctional Facilities | | | | |
|---|---|---|---|---|
| Fiscal Year | Inmate Bed Impact | Construction Cost | Operating Cost | Total Cost |
| FY 2013-14 | 0.0 | $0 | $0 | $0 |
| FY 2014-15 | 1.0 | 0 | 0 | 0 |
| FY 2015-16 | 0.0 | 0 | 19,983 | 19,983 |
| FY 2016-17 | 0.0 | 0 | 0 | 0 |
| FY 2017-18 | 0.0 | 0 | 0 | 0 |
| Total | | $0 | $19,983 | $19,983 |

Page 4
February 27, 2013

**HB13-1224**

**Local Government Impact**

This bill will affect local governments in two ways: it could increase the use of county jails and workload related to investigating and prosecuting the new offenses, as described below.

This bill creates three new crimes: two class 2 misdemeanors and one class 1 misdemeanor. The penalty for a class 2 misdemeanor is 3 to 12 months in a county jail, a fine of $250 to $1,000, or both. The penalty for a class 1 misdemeanor is 6 to 18 months in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. For the current fiscal year, the state reimburses county jails at a daily rate of $50.44 to house state inmates. The bill also impacts local governments (police departments, sheriff offices, and district attorneys) by requiring them to investigate and prosecute offenses under the bill. These costs are anticipated to be minimal.

**Comparable Crime**

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1224 adds four new crimes. As of this writing, no information about the prevalence of these crimes is available and under current law. However, current law provides penalties for the use of a weapon in the commission of a crime. For example, possession of an illegal weapon is a class 1 misdemeanor, although subsequent offenses within five years or for certain offenders are a class 5 felony. Prohibited use of weapons is a class 2 misdemeanor and an unlawful purchase of firearms is a class 4 felony. In addition, within the City and County of Denver only there is a prohibition against magazines with capacity for more than 21 bullets.

**State Appropriations**

The Department of Corrections requires the five-year appropriations shown in Table 1.

**Departments Contacted**

| | | |
|---|---|---|
| Corrections | Counties | Judicial |
| Local Affairs | Municipalities | Public Safety |

**HB13-1224**

*Colorado Legislative Council Staff Fiscal Note*

# FINAL
# FISCAL NOTE

| | |
|---|---|
| **Drafting Number:** LLS 13-0810 | **Date:** May 21, 2013 |
| **Prime Sponsor(s):** Rep. Fields | **Bill Status:** Signed into Law |
| Sen. Hodge | **Fiscal Analyst:** Kerry White (303-866-3469) |

**TITLE:**      CONCERNING PROHIBITING LARGE-CAPACITY AMMUNITION MAGAZINES.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 | FY 2015-16 |
|---|---|---|---|
| **State Revenue** | | | |
| Cash Funds | | | |
| Fines Collection Cash Fund | <$5,000 | <$5,000 | <$5,000 |
| **State Expenditures** | | | |
| General Fund | | | $19,983 |
| **FTE Position Change** | | | |
| **Effective Date:** The bill was signed by the Governor on March 20, 2013, and takes effect July 1, 2013. | | | |
| **Appropriation Summary for FY 2013-2014:** See State Appropriations section. | | | |
| **Local Government Impact:** See Local Government Impact section. | | | |

## Summary of Legislation

This bill establishes limitations on large-capacity ammunition magazines, which are defined as those that can accept more than 15 rounds of ammunition, 8 shotgun shells when combined with a fixed magazine, or 28 inches of shotgun shells.

*Prohibition of the sales, transfer, or possession of large-capacity magazines.* Beginning on July 1, 2013, the following actions are subject to criminal penalties:

- sales, transfer, or possession of a large-capacity magazine is a class 2 misdemeanor;
- second and future violations of the prohibition of the sale, transfer, or possession of a large-capacity magazine is a class 1 misdemeanor; and
- use of a large-capacity magazine in the commission of a felony or crime of violence is a class 6 felony.

The prohibition against the transfer or possession of these magazines does not apply to a manufacturer, gun dealer, or employee thereof that sells large-capacity magazines exclusively to:

- a local, state, or federal government employee engaged in his or her official duties;
- a branch of the armed forces;
- the state or its political subdivisions;

5597

**HB13-1224**

- a foreign national government that has been approved for such transfers;
- a firearms retailer for the purposes of sales outside of Colorado;
- an out-of-state transferee who is legally allowed to possess the magazine; or
- a person who possesses the magazine to transport it to an out-of-state entity on behalf of a manufacturer of large-capacity magazines within Colorado.

Those who maintained continuous possession of the magazine prior to the bill's effective date are allowed to retain ownership, and the prosecution has the burden of proof if a person asserts he or she owns the magazine legally.

*Manufacturers.* As of July 1, 2013, a magazine manufactured in Colorado must have a permanent stamp or marking engraved or cast upon its outer surface to indicate that it was manufactured after this date. Failure to do so is a class 2 misdemeanor. The Department of Public Safety is authorized to promulgate rules to enforce this provision.

## State Revenue

Beginning in FY 2013-14, this bill will increase state cash fund revenue by less than $5,000 per year, credited to the Fines Collection Cash Fund in the Judicial Department. By adding two class 2 misdemeanors, one class 1 misdemeanor, and one class 6 felony, individuals convicted of these crimes may be required to pay a fine. Under current law, fine penalties are $1,000 to $1,000 for a class 6 felony; $500 to $5,000 for a class 1 misdemeanor; and $250 to $1,000 for a class 2 misdemeanor. To the extent that this court imposes fines on persons convicted under this bill, state revenue will increase.

## State Expenditures

Overall, this bill will increase state expenditures as discussed below.

*Judicial Department.* This bill creates three new misdemeanors and one new felony charge related to large-capacity ammunition magazines. Because existing owners are grandfathered in and gun owners and dealers will be prohibited from selling or transferring existing magazines in Colorado unless certain conditions are met, this analysis assumes that new case filings will be minimal. Court and probation costs are, therefore, anticipated to be addressed within existing appropriations.

*Office of the State Public Defender (OSPD).* The OSPD may experience an increase in workload due to new case filings and increases in the time to litigate cases. The number of case filings associated with crimes created under the bill is expected to be low and not require an increase in appropriations.

*Department of Public Safety.* The Department of Public Safety is authorized to promulgate rules concerning the requirements to engrave or cast a permanent stamp or marking on magazines. This cost can be absorbed within existing appropriations.

**HB13-1224**

*Department of Corrections.* Under House Bill 13-1224, the use of a large-capacity magazine in the commission of a felony or crime of violence is a class 6 felony. As of this writing, it is unknown how many offenders for these types of crimes have used a large-capacity magazine. This analysis assumes that most offenders sentenced for a felony or crime of violence will already be going to prison and, in most cases, will serve their sentence for the class 6 felony penalty included under the bill concurrent with the sentence for the original crime. However, the fiscal note assumes one offender every five years will be required to serve the sentence for the class 6 felony under this bill consecutively. This results in an increase in costs of $19,983 every five years. The impact is shown in the third year to account for a one-year delay in prosecution and a minimum of one-year sentence for any other felony. However, it is possible that this impact may not be seen until several years later.

Current law prohibits the General Assembly from passing any bill to increase periods of imprisonment in state correctional facilities without appropriating an amount sufficient to cover the increased capital construction and operating costs of the bill in each of the first five fiscal years. However, current law also allows the DOC to place offenders classified as medium custody and below in private contract prisons, for which no state capital construction costs are incurred.

Offenders sentenced under this bill to DOC may be placed in either a state-run or a private contract prison, depending on several factors. Any offenders that *must* be housed in a state-run prison will likely require a shift of other inmates in that facility to private contract prisons. Therefore, this fiscal note assumes that the impact of this bill will be accommodated through the use of private contract prisons, and that no new capital construction funds are necessary.

Offenders placed in a private contract prison cost the state about $57.03 per offender per day, including the current daily rate of $52.69 and an estimated $4.34 per offender per day for medical care provided by the DOC. Table 1 shows the estimated cost of the bill over the next five fiscal years.

| Table 1. Five-Year Fiscal Impact On Correctional Facilities | | | | |
|---|---|---|---|---|
| Fiscal Year | Inmate Bed Impact | Construction Cost | Operating Cost | Total Cost |
| FY 2013-14 | 0.0 | $0 | $0 | $0 |
| FY 2014-15 | 1.0 | 0 | 0 | 0 |
| FY 2015-16 | 0.0 | 0 | 19,983 | 19,983 |
| FY 2016-17 | 0.0 | 0 | 0 | 0 |
| FY 2017-18 | 0.0 | 0 | 0 | 0 |
| Total | | $0 | $19,983 | $19,983 |

Page 4
May 21, 2013

**HB13-1224**

**Local Government Impact**

This bill will affect local governments in two ways: it could increase the use of county jails and workload related to investigating and prosecuting the new offenses, as described below.

This bill creates three new crimes: two class 2 misdemeanors and one class 1 misdemeanor. The penalty for a class 2 misdemeanor is 3 to 12 months in a county jail, a fine of $250 to $1,000, or both. The penalty for a class 1 misdemeanor is 6 to 18 months in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. For the current fiscal year, the state reimburses county jails at a daily rate of $50.44 to house state inmates. The bill also impacts local governments (police departments, sheriff offices, and district attorneys) by requiring them to investigate and prosecute offenses under the bill. These costs are anticipated to be minimal.

**Comparable Crime**

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1224 adds four new crimes. As of this writing, no information about the prevalence of these crimes is available and under current law. However, current law provides penalties for the use of a weapon in the commission of a crime. For example, possession of an illegal weapon is a class 1 misdemeanor, although subsequent offenses within five years or for certain offenders are a class 5 felony. Prohibited use of weapons is a class 2 misdemeanor and an unlawful purchase of firearms is a class 4 felony. In addition, within the City and County of Denver only there is a prohibition against magazines with capacity for more than 21 bullets.

**State Appropriations**

The Department of Corrections requires the five-year appropriations shown in Table 1.

**Departments Contacted**

| | | |
|---|---|---|
| Corrections | Counties | Judicial |
| Local Affairs | Municipalities | Natural Resources |
| Public Safety | | |

**HB13-1229**



*Colorado Legislative Council Staff Fiscal Note*
# STATE and LOCAL
# FISCAL IMPACT

| | | | |
|---|---|---|---|
| **Drafting Number:** | LLS 13-0043 | **Date:** | February 12, 2013 |
| **Prime Sponsor(s):** | Rep. Fields; McCann | **Bill Status:** | House Judiciary |
| | Sen. Carroll | **Fiscal Analyst:** | Hillary Smith (303-866-3277) |

**TITLE:**     CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A FIREARM.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 |
|---|---|---|
| **State Revenue**<br>Cash Funds<br>   Fines Collection Cash Fund | <$5,000 | <$5,000 |
| **State Expenditures**<br>General Fund | $1,563,387 | $1,660,877 |
| **FTE Position Change** | 24.9 FTE | 29.9 FTE |
| **Effective Date:** July 1, 2013. | | |
| **Appropriation Summary for FY 2013-2014:** The Department of Public Safety Requires $1,563,387 General Fund and 24.9 FTE. | | |
| **Local Government Impact:** See Local Government Impact section. | | |

**Note: While affected state agencies were canvassed, not all agencies were able to respond with complete information in the time provided. Therefore, this fiscal note should be considered preliminary. It will be updated if new information becomes available.**

## Summary of Legislation

This bill expands situations in which background checks are required prior to the transfer of a firearm and changes the process for reporting and updating the records on which background checks are based. The bill also creates a judicial process for petitioning for relief from federal firearms prohibitions pursuant to the federal National Instant Criminal Background Check System (NICS) Improvement Amendments Act of 2007. Further detail on these changes is provided below.

***Background check requirements.*** Current state and federal law requires a licensed gun dealer to obtain a background check prior to transferring possession of a firearm. State law also requires a gun show vendor to obtain a background check and the approval of the Colorado Bureau of Investigation (CBI) within the Department of Public Safety prior to transferring possession of a firearm. This bill requires any person who is not a licensed gun dealer to obtain a background check and the approval of the CBI prior to transferring possession of a firearm.

EXHIBIT

tabbies

146     5601

**HB13-1229**

Under the bill, individuals who are not licensed gun dealers must arrange for a licensed gun dealer to obtain the necessary background check. The dealer may charge a fee of up to $10 for this service. A person who transfers a firearm to an individual in violation of the bill may be liable for any civil damages proximately caused by that individual's subsequent use of the firearm. In addition, anyone who violates the background check requirements of the bill commits a class 1 misdemeanor and is prohibited from possessing a firearm for two years. The bill creates several exemptions to its requirements, including the transfer of an antique firearm, a transfer that is a gift between family members, and certain temporary transfers.

*Court records.* Under current law, district and probate courts must report information to the NICS concerning individuals:

- whom the court has found to be incapacitated;
- who have been committed by the court to the Department of Human Services; and
- for whom the court has entered an order for involuntary certification for treatment of mental illness.

This bill requires district and probate courts to also report such information to the CBI. In addition, a court, upon becoming aware that such a record does not apply or no longer applies, must notify the Attorney General and update, correct, modify, or remove the record from any federal or state database.

*Petition for relief from federal firearms prohibitions.* The bill establishes a relief from disabilities program in accordance with the NICS Improvement Amendments Act of 2007. Under the bill, a person may petition for relief if, as a result of court action, he or she was: found incapacitated; committed to the Department of Human Services; or involuntarily certified for treatment for mental illness, and would be prohibited from shipping, transporting, possessing, or receiving a firearm by federal law. The bill specifies the procedures for a court proceeding concerning a petition for relief, and states that the court must consider the circumstances surrounding the firearms prohibitions, the petitioner's record, including mental health and criminal records, and the petitioner's reputation. Prior to granting relief, the court must find that the petitioner is not likely to act in a manner that is dangerous to public safety and granting relief is not contrary to the public interest. If a petition is denied, the petitioner may appeal to the Court of Appeals.

If the request for relief is granted, the adjudication or commitment that prevented the individual from buying or possessing a firearm is deemed not to have occurred for the purposes of the federal firearm prohibition. In addition, if a record of such an adjudication or commitment is removed by the Federal Bureau of Investigation or by the state in order to update or correct the NICS database, the individual concerned will also be granted relief from disabilities. Previously, any person who had been adjudicated as a mental defective or who had been committed to a mental institution was effectively banned from possessing a firearm for life under federal law.

Page 3                                                                    **HB13-1229**
February 12, 2013

**State Revenue**

The bill may increase state revenue from fines, although less than $5,000 in new state revenue is expected per year. According to Section 18-1.3-501, C.R.S., the penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Fine revenue that is not otherwise appropriated is deposited into the Fines Collection Cash Fund. Because the courts have the discretion of incarceration, imposing a fine, or both, the impact to state revenue is expected to be minimal.

**State Expenditures**

*Department of Public Safety.* This bill will increase state expenditures in the Department of Public Safety by the amounts shown in Table 1. These costs would be paid from the General Fund and are described in greater detail below. Please note that because the bill requires more than 20 FTE, costs that are generally centrally appropriated are shown in Table 1 as well.

| Table 1. Expenditures Under HB13-1229 | | |
|---|---|---|
| **Cost Components** | **FY 2013-14** | **FY 2014-15** |
| Personal Services | $1,088,849 | $1,222,553 |
| FTE | 24.9 | 29.9 |
| Operating Expenses and Capital Outlay | $140,952 | $28,405 |
| Employee Insurance (Health, Life, Dental, and Short-term Disability) | $165,163 | $198,058 |
| Supplemental Employee Retirement Payments | $68,687 | $92,261 |
| Leased Space | $99,736 | $119,600 |
| **TOTAL** | **$1,563,387** | **$1,660,877** |

The need to process additional background checks will increase workload for the CBI within the Department of Public Safety. This fiscal note is based on the following assumptions:

- approximately 400,000 background checks will occur in FY 2013-14 under current law, and this number represents 67 percent of all gun transfers;
- approximately 200,000 background checks for private firearms transfers will occur in FY 2013-14;
- background checks for private firearms transfers will increase by 10 percent between FY 2013-14 and FY 2014-15, to a total of 220,000;
- the rate of transfer denials for private sales will be 5 percent, and 54 percent of those denied will appeal, resulting in 5,400 appeals in FY 2013-14 and 5,940 appeals in FY 2014-15; and

**HB13-1229**

- this note only attempts to account for the growth in private gun transfers, because any increase in the number of transfers or appeals occurring under current law would be addressed during the annual budget process.

In addition, this fiscal note assumes that one technician can process 1,483 firearm transfer background checks per month, and that each appeal requires three hours of FTE time to research. Based on these assumptions, 18.5 additional technicians will be required as a result of the bill, and this increase in technicians will result in an estimated need for 6.4 FTE in supervisory and administrative staff, for a total FTE increase of 24.9 in FY 2013-14. The FTE need for the department will increase to 29.9 FTE in FY 2014-15 based on an estimated increase in private gun transfers and appeals, consisting of 22.4 technicians and 7.5 FTE in administrative and supervisory staff.

*Judicial Branch.* Workload will increase for trial courts and the Court of Appeals due to the relief from disabilities program, the new cause of civil action, and the new misdemeanor created by the bill. This fiscal note assumes that the number of new petition, civil action, and criminal filings will be addressed within existing resources and will not require additional appropriations. In addition, the Office of the State Public Defender and the Office of the Alternate Defense Counsel may be required to serve as defense counsel for individuals charged with the new misdemeanor created by the bill. However, this note assumes that many of those individuals would be facing other charges under current law, and any new clients can be served within existing appropriations.

**Comparable Crime**

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1229 creates a new class 1 misdemeanor for failing to comply with the requirement that any person who is not a licensed gun dealer obtain a background check and the approval of the CBI prior to transferring possession of a firearm. In 2000, a voter-approved initiative made it a class 1 misdemeanor for a gun show vendor to fail to obtain a background check and the approval of CBI prior to a firearms transfer. Since that time, zero individuals have been charged with this crime.

This fiscal note assumes that approximately 33 percent of total firearm transfers in Colorado occur between private individuals who are not subject to background check requirements under current law. The fiscal note assumes that 200,000 firearm transfers will occur in FY 2013-14 between private individuals. Although no gun show vendors have been charged with a class 1 misdemeanor for failure to conduct a background check as required by law, it is expected that at least 5 percent, or 10,000 private transactions will be conducted without a background check, and that 5 percent, or 500 of those transactions may be involved in law enforcement investigations. If those assumptions are correct, there is the potential for 1,000 new charges of class 1 misdemeanors (one charge for the person who transferred the firearm, and one charge for the person who received the firearm). However, it is likely that many of the individuals subject to this new charge would already be facing other charges.

**HB13-1229**

## Local Government Impact

The new misdemeanor created by the bill will increase workload and expenditures in district attorneys' and county sheriffs' offices. The amount will vary by the jurisdiction and the number of cases. The penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. In addition, it is likely that some proportion of individuals charged with transferring or receiving a firearm in violation of the bill may be subject to other charges. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. It is assumed that the impact of this new misdemeanor will be minimal and will not create the need for additional county jail space, because the majority of offenders charged with the class 1 misdemeanor created by the bill would be facing other charges under current law, and would therefore already be likely to be imprisoned in a county jail for some length of time.

## Departmental Differences

The Department of Public Safety made several different assumptions concerning the number of private gun transfer background checks that would result from the bill and the information technology needs driven by the bill. Specifically, the department estimated that it would need $406,000 in FY 2013-14 to modernize its information technology system by upgrading its website for firearms dealers, increasing security, improving its ability to manage the queue of background checks, and more fully automating its court record search process. In addition, the department identified a need for annual maintenance costs for the system equal to 15 percent of the total cost, beginning in FY 2014-15. In total, the department estimated that the bill would require $3,471,328 General Fund and 49.4 FTE in FY 2013-14, and $3,176,283 General Fund and 56.3 FTE in FY 2014-15. Costs for upgrading the system were not included in the fiscal note because existing systems can be used to perform the background checks for private transactions and it is not clear that the update is required by the bill; it seems more likely that such a request would be addressed during the annual budget process.

## State Appropriations

For FY 2013-14, the Department of Public Safety requires an appropriation of $1,563,387 General Fund and 24.9 FTE.

## Departments Contacted

| | | |
|---|---|---|
| Corrections | Counties | District Attorneys |
| Human Services | Judicial | Law |
| Local Affairs | Municipalities | Office of Information Technology |
| Public Safety | Sheriffs | |

**HB13-1229**

*Colorado Legislative Council Staff Fiscal Note*

# STATE and LOCAL
# REVISED FISCAL IMPACT
(replaces fiscal note dated February 12, 2013)

**Drafting Number:** LLS 13-0043
**Prime Sponsor(s):** Rep. Fields; McCann
Sen. Carroll

**Date:** February 13, 2013
**Bill Status:** House Appropriations
**Fiscal Analyst:** Hillary Smith (303-866-3277)

**TITLE:**  CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A FIREARM.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 |
|---|---|---|
| **State Revenue**<br>Cash Funds<br>    Fines Collection Cash Fund | <$5,000 | <$5,000 |
| **State Expenditures**<br>General Fund | $1,612,007 | $1,660,877 |
| **FTE Position Change** | 27.4 FTE | 29.9 FTE |
| **Effective Date:** July 1, 2013. | | |
| **Appropriation Summary for FY 2013-2014:**  The Department of Public Safety Requires $1,612,007 General Fund and 27.4 FTE. | | |
| **Local Government Impact:** See Local Government Impact section. | | |

**Note: While affected state agencies were canvassed, not all agencies were able to respond with complete information in the time provided.  Therefore, this fiscal note should be considered preliminary.  It will be updated if new information becomes available.**

## Summary of Legislation

**This fiscal note is revised to correct the prorated calculation of FTE and personal services expenses for FY 2013-14.** This bill expands situations in which background checks are required prior to the transfer of a firearm and changes the process for reporting and updating the records on which background checks are based.  The bill also creates a judicial process for petitioning for relief from federal firearms prohibitions pursuant to the federal National Instant Criminal Background Check System (NICS) Improvement Amendments Act of 2007. Further detail on these changes is provided below.

***Background check requirements.*** Current state and federal law requires a licensed gun dealer to obtain a background check prior to transferring possession of a firearm.  State law also requires a gun show vendor to obtain a background check and the approval of the Colorado Bureau of Investigation (CBI) within the Department of Public Safety prior to transferring possession of a firearm. This bill requires any person who is not a licensed gun dealer to obtain a background check and the approval of the CBI prior to transferring possession of a firearm.

5606

**HB13-1229**

Under the bill, individuals who are not licensed gun dealers must arrange for a licensed gun dealer to obtain the necessary background check. The dealer may charge a fee of up to $10 for this service. A person who transfers a firearm to an individual in violation of the bill may be liable for any civil damages proximately caused by that individual's subsequent use of the firearm. In addition, anyone who violates the background check requirements of the bill commits a class 1 misdemeanor and is prohibited from possessing a firearm for two years. The bill creates several exemptions to its requirements, including the transfer of an antique firearm, a transfer that is a gift between family members, and certain temporary transfers.

*Court records.* Under current law, district and probate courts must report information to the NICS concerning individuals:

- whom the court has found to be incapacitated;
- who have been committed by the court to the Department of Human Services; and
- for whom the court has entered an order for involuntary certification for treatment of mental illness.

This bill requires district and probate courts to also report such information to the CBI. In addition, a court, upon becoming aware that such a record does not apply or no longer applies, must notify the Attorney General and update, correct, modify, or remove the record from any federal or state database.

*Petition for relief from federal firearms prohibitions.* The bill establishes a relief from disabilities program in accordance with the NICS Improvement Amendments Act of 2007. Under the bill, a person may petition for relief if, as a result of court action, he or she was: found incapacitated; committed to the Department of Human Services; or involuntarily certified for treatment for mental illness, and would be prohibited from shipping, transporting, possessing, or receiving a firearm by federal law. The bill specifies the procedures for a court proceeding concerning a petition for relief, and states that the court must consider the circumstances surrounding the firearms prohibitions, the petitioner's record, including mental health and criminal records, and the petitioner's reputation. Prior to granting relief, the court must find that the petitioner is not likely to act in a manner that is dangerous to public safety and granting relief is not contrary to the public interest. If a petition is denied, the petitioner may appeal to the Court of Appeals.

If the request for relief is granted, the adjudication or commitment that prevented the individual from buying or possessing a firearm is deemed not to have occurred for the purposes of the federal firearm prohibition. In addition, if a record of such an adjudication or commitment is removed by the Federal Bureau of Investigation or by the state in order to update or correct the NICS database, the individual concerned will also be granted relief from disabilities. Previously, any person who had been adjudicated as a mental defective or who had been committed to a mental institution was effectively banned from possessing a firearm for life under federal law.

# HB13-1229

## State Revenue

The bill may increase state revenue from fines, although less than $5,000 in new state revenue is expected per year. According to Section 18-1.3-501, C.R.S., the penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Fine revenue that is not otherwise appropriated is deposited into the Fines Collection Cash Fund. Because the courts have the discretion of incarceration, imposing a fine, or both, the impact to state revenue is expected to be minimal.

## State Expenditures

*Department of Public Safety.* This bill will increase state expenditures in the Department of Public Safety by the amounts shown in Table 1. These costs would be paid from the General Fund and are described in greater detail below. Please note that because the bill requires more than 20 FTE, costs that are generally centrally appropriated are shown in Table 1 as well.

| Table 1. Expenditures Under HB13-1229 | | |
|---|---|---|
| **Cost Components** | **FY 2013-14** | **FY 2014-15** |
| Personal Services | $1,096,826 | $1,222,553 |
|    FTE | 27.4 | 29.9 |
| Operating Expenses and Capital Outlay | $154,892 | $28,405 |
| Employee Insurance (Health, Life, Dental, and Short-term Disability) | $181,498 | $198,058 |
| Supplemental Employee Retirement Payments | $69,190 | $92,261 |
| Leased Space | $109,600 | $119,600 |
| **TOTAL** | **$1,612,006** | **$1,660,877** |

The need to process additional background checks will increase workload for the CBI within the Department of Public Safety. This fiscal note is based on the following assumptions:

- approximately 400,000 background checks will occur in FY 2013-14 under current law, and this number represents 67 percent of all gun transfers;
- approximately 200,000 background checks for private firearms transfers will occur in FY 2013-14;
- background checks for private firearms transfers will increase by 10 percent between FY 2013-14 and FY 2014-15, to a total of 220,000;
- the rate of transfer denials for private sales will be 5 percent, and 54 percent of those denied will appeal, resulting in 5,400 appeals in FY 2013-14 and 5,940 appeals in FY 2014-15; and

- this note only attempts to account for the growth in private gun transfers, because any increase in the number of transfers or appeals occurring under current law would be addressed during the annual budget process.

In addition, this fiscal note assumes that one technician can process 1,483 firearm transfer background checks per month, and that each appeal requires three hours of FTE time to research. Based on these assumptions, 20.3 additional technicians will be required as a result of the bill, and this increase in technicians will result in an estimated need for 7.1 FTE in supervisory and administrative staff, for a total FTE increase of 27.4 in FY 2013-14. The FTE need for the department will increase to 29.9 FTE in FY 2014-15 based on an estimated increase in private gun transfers and appeals, consisting of 22.4 technicians and 7.5 FTE in administrative and supervisory staff.

***Judicial Branch.*** Workload will increase for trial courts and the Court of Appeals due to the relief from disabilities program, the new cause of civil action, and the new misdemeanor created by the bill. This fiscal note assumes that the number of new petition, civil action, and criminal filings will be addressed within existing resources and will not require additional appropriations. In addition, the Office of the State Public Defender and the Office of the Alternate Defense Counsel may be required to serve as defense counsel for individuals charged with the new misdemeanor created by the bill. However, this note assumes that many of those individuals would be facing other charges under current law, and any new clients can be served within existing appropriations.

## Comparable Crime

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1229 creates a new class 1 misdemeanor for failing to comply with the requirement that any person who is not a licensed gun dealer obtain a background check and the approval of the CBI prior to transferring possession of a firearm. In 2000, a voter-approved initiative made it a class 1 misdemeanor for a gun show vendor to fail to obtain a background check and the approval of CBI prior to a firearms transfer. Since that time, zero individuals have been charged with this crime.

This fiscal note assumes that approximately 33 percent of total firearm transfers in Colorado occur between private individuals who are not subject to background check requirements under current law. The fiscal note assumes that 200,000 firearm transfers will occur in FY 2013-14 between private individuals. Although no gun show vendors have been charged with a class 1 misdemeanor for failure to conduct a background check as required by law, it is expected that at least 5 percent, or 10,000 private transactions will be conducted without a background check, and that 5 percent, or 500 of those transactions may be involved in law enforcement investigations. If those assumptions are correct, there is the potential for 1,000 new charges of class 1 misdemeanors (one charge for the person who transferred the firearm, and one charge for the person who received the firearm). However, it is likely that many of the individuals subject to this new charge would already be facing other charges.

Page 5                                                                    **HB13-1229**
February 13, 2013

## Local Government Impact

The new misdemeanor created by the bill will increase workload and expenditures in district attorneys' and county sheriffs' offices. The amount will vary by the jurisdiction and the number of cases. The penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. In addition, it is likely that some proportion of individuals charged with transferring or receiving a firearm in violation of the bill may be subject to other charges. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. It is assumed that the impact of this new misdemeanor will be minimal and will not create the need for additional county jail space, because the majority of offenders charged with the class 1 misdemeanor created by the bill would be facing other charges under current law, and would therefore already be likely to be imprisoned in a county jail for some length of time.

## Departmental Differences

The Department of Public Safety made several different assumptions concerning the number of private gun transfer background checks that would result from the bill and the information technology needs driven by the bill. Specifically, the department estimated that it would need $406,000 in FY 2013-14 to modernize its information technology system by upgrading its website for firearms dealers, increasing security, improving its ability to manage the queue of background checks, and more fully automating its court record search process. In addition, the department identified a need for annual maintenance costs for the system equal to 15 percent of the total cost, beginning in FY 2014-15. In total, the department estimated that the bill would require $3,599,992 General Fund and 56.3 FTE in FY 2013-14, and $3,176,283 General Fund and 56.3 FTE in FY 2014-15. Costs for upgrading the system were not included in the fiscal note because existing systems can be used to perform the background checks for private transactions and it is not clear that the update is required by the bill; it seems more likely that such a request would be addressed during the annual budget process.

## State Appropriations

For FY 2013-14, the Department of Public Safety requires an appropriation of $1,612,007 General Fund and 27.4 FTE.

## Departments Contacted

| | | |
|---|---|---|
| Corrections | Counties | District Attorneys |
| Human Services | Judicial | Law |
| Local Affairs | Municipalities | Office of Information Technology |
| Public Safety | Sheriffs | |

5610

**HB13-1229**

*Colorado Legislative Council Staff Fiscal Note*
# STATE and LOCAL
# REVISED FISCAL IMPACT
(replaces fiscal note dated February 13, 2013)

| | |
|---|---|
| **Drafting Number:** LLS 13-0043 | **Date:** March 1, 2013 |
| **Prime Sponsor(s):** Rep. Fields; McCann | **Bill Status:** Senate SVMA |
| Sen. Carroll | **Fiscal Analyst:** Hillary Smith (303-866-3277) |

**TITLE:**  CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A FIREARM, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION.

| Fiscal Impact Summary | FY 2013-2014 | FY 2014-2015 |
|---|---|---|
| **State Revenue**<br>Cash Funds<br>    Fines Collection Cash Fund | <$5,000 | <$5,000 |
| **State Expenditures**<br>General Fund* | $1,533,507 | $1,529,033 |
| **FTE Position Change** | 24.7 FTE | 26.3 FTE |
| **Effective Date:** July 1, 2013. | | |
| **Appropriation Summary for FY 2013-2014:** See State Appropriations section. | | |
| **Local Government Impact:** See Local Government Impact section. | | |

\* *If House Bill 13-1228 becomes law, any appropriations required for this bill would come from the Instant Criminal Background Check Cash Fund, although sufficient funds may not be available in this cash fund for a period of time.*

## Summary of Legislation

This **reengrossed** bill expands situations in which background checks are required prior to the transfer of a firearm and changes the process for reporting and updating the records on which background checks are based. The bill also creates a judicial process for petitioning for relief from federal firearms prohibitions pursuant to the federal National Instant Criminal Background Check System (NICS) Improvement Amendments Act of 2007. Further detail on these changes is provided below.

*Background check requirements.* Current state and federal law requires a licensed gun dealer to obtain a background check prior to transferring possession of a firearm. State law also requires a gun show vendor to obtain a background check and the approval of the Colorado Bureau of Investigation (CBI) within the Department of Public Safety prior to transferring possession of a firearm. This bill requires any person who is not a licensed gun dealer to obtain a background check and the approval of the CBI prior to transferring possession of a firearm.

5611

**HB13-1229**

Under the bill, individuals who are not licensed gun dealers must arrange for a licensed gun dealer to obtain the necessary background check. The dealer may charge a fee of up to $10 for this service. A person who transfers a firearm to an individual in violation of the bill may be liable for any civil damages proximately caused by that individual's subsequent use of the firearm. In addition, anyone who violates the background check requirements of the bill commits a class 1 misdemeanor and is prohibited from possessing a firearm for two years. The bill creates several exemptions to its requirements, including the transfer of an antique firearm, a transfer that is a gift between immediate family members, and certain temporary transfers.

***Court records.*** Under current law, district and probate courts must report information to the NICS concerning individuals:

- whom the court has found to be incapacitated;
- who have been committed by the court to the Department of Human Services; and
- for whom the court has entered an order for involuntary certification for treatment of mental illness.

This bill requires district and probate courts to also report such information to the CBI. In addition, a court, upon becoming aware that such a record does not apply or no longer applies, must notify the Attorney General and update, correct, modify, or remove the record from any federal or state database.

***Petition for relief from federal firearms prohibitions.*** The bill establishes a relief from disabilities program in accordance with the NICS Improvement Amendments Act of 2007. Under the bill, a person may petition for relief if, as a result of court action, he or she was: found incapacitated; committed to the Department of Human Services; or involuntarily certified for treatment for mental illness, and would be prohibited from shipping, transporting, possessing, or receiving a firearm by federal law. The bill specifies the procedures for a court proceeding concerning a petition for relief, and states that the court must consider the circumstances surrounding the firearms prohibitions, the petitioner's record, including mental health and criminal records, and the petitioner's reputation. Prior to granting relief, the court must find that the petitioner is not likely to act in a manner that is dangerous to public safety and granting relief is not contrary to the public interest. If a petition is denied, the petitioner may appeal to the Court of Appeals.

If the request for relief is granted, the adjudication or commitment that prevented the individual from buying or possessing a firearm is deemed not to have occurred for the purposes of the federal firearm prohibition. In addition, if a record of such an adjudication or commitment is removed by the Federal Bureau of Investigation (FBI) or by the state in order to update or correct the NICS database, the individual concerned will also be granted relief from disabilities. Previously, any person who had been adjudicated as a mental defective or who had been committed to a mental institution was effectively banned from possessing a firearm for life under federal law.

Page 3                                                              **HB13-1229**
March 1, 2013

## State Revenue

The bill may increase state revenue from fines, although less than $5,000 in new state revenue is expected per year. According to Section 18-1.3-501, C.R.S., the penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Fine revenue that is not otherwise appropriated is deposited into the Fines Collection Cash Fund. Because the courts have the discretion of incarceration, imposing a fine, or both, the impact to state revenue is expected to be minimal.

## State Expenditures

*Department of Public Safety.* This bill will increase state expenditures in the Department of Public Safety (DPS) by the amounts shown in Table 1. These costs would be paid from the General Fund and are described in greater detail below. Please note that because the bill requires more than 20 FTE, costs that are generally centrally appropriated are shown in Table 1 as well.

| Table 1. Expenditures Under HB13-1229 | | |
|---|---|---|
| **Cost Components** | **FY 2013-14** | **FY 2014-15** |
| Personal Services | $989,072 | $1,143,371 |
|    FTE | 24.7 | 26.3 |
| Operating Expenses and Capital Outlay | $139,629 | $24,985 |
| Information Technology Costs to allow data transfer from Judicial | $80,000 | $0 |
| Employee Insurance (Health, Life, Dental, and Short-term Disability) | $163,613 | $174,211 |
| Supplemental Employee Retirement Payments | $62,393 | $81,265 |
| Leased Space | $98,800 | $105,200 |
| **TOTAL** | **$1,533,507** | **$1,529,033** |

The need to process additional background checks will increase workload for the CBI within the Department of Public Safety. This fiscal note is based on the following assumptions:

- approximately 330,000 background checks will occur in FY 2013-14 under current law, and this number represents 62 percent of all gun transfers;
- approximately 200,000 background checks for private firearms transfers will occur in FY 2013-14;
- background checks for private firearms transfers will increase by 10 percent between FY 2013-14 and FY 2014-15, to a total of 220,000;

**HB13-1229**

- the rate of transfer denials for private sales will be 5 percent, and 54 percent of those denied will appeal, resulting in 5,400 appeals in FY 2013-14 and 5,940 appeals in FY 2014-15; and
- this note only attempts to account for the growth in private gun transfers, because any increase in the number of transfers or appeals occurring under current law would be addressed during the annual budget process.

In addition, this fiscal note assumes that one technician can process 1,483 firearm transfer background checks per month, and that each appeal requires three hours of FTE time to research. Based on these assumptions, 19.0 additional technicians will be required as a result of the bill, and this increase in technicians will result in an estimated need for 5.7 FTE in supervisory and administrative staff, for a total FTE increase of 24.7 in FY 2013-14. The FTE need for the department will increase to 26.3 FTE in FY 2014-15 based on an estimated increase in private gun transfers and appeals, consisting of 20.4 technicians and 5.9 FTE in administrative and supervisory staff.

Finally, this note assumes that the intent of the bill is to allow the DPS access to judicial orders of incapacitation, commitment, or involuntary certification for treatment of mental illness orders prior to the entry of those orders in the federal NICS system. Currently, there is a time lag of up to six months for the FBI to enter this data into the NICS system. Under the bill, it is anticipated that the Colorado Judicial Branch will load this data into the Colorado Integrated Crime Justice Information System (CICJIS) database and the DPS will extract the data through the Colorado Crime Information Center (CCIC) database, which is one of the databases checked during a background check. In order to accomplish this data transfer, the DPS requires up to $80,000 in one-time information technology costs to reprogram the CCIC in order to create new fields to hold the data from district and probate courts concerning mental-health-related orders and to update notification processes. These costs are estimated by the Computer Projects of Illinois, Inc., a third-party vendor responsible for programming changes to the CCIC.

It should be noted that after the bill's effective date of July 1, 2013, the DPS will need to acquire leased space and hire and train the new staff needed as a result of the bill. If requests for background checks increase as expected after July 1, 2013, there will be a time lag before the DPS has staff in place to process the new requests. Therefore, wait times for background checks will likely increase during this time.

*Judicial Branch.* Workload will increase for trial courts and the Court of Appeals due to the relief from disabilities program, the new cause of civil action, and the new misdemeanor created by the bill. This fiscal note assumes that the number of new petition, civil action, and criminal filings will be addressed within existing resources and will not require additional appropriations. The costs to update the Colorado Integrated Crime Justice Information System (CICJIS) database to reflect orders concerning incapacitation, commitment, or involuntary certification will not require additional appropriations.

# HB13-1229

In addition, the Office of the State Public Defender and the Office of the Alternate Defense Counsel may be required to serve as defense counsel for individuals charged with the new misdemeanor created by the bill. However, this note assumes that many of those individuals would be facing other charges under current law, and any new clients can be served within existing appropriations.

## Comparable Crime

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1229 creates a new class 1 misdemeanor for failing to comply with the requirement that any person who is not a licensed gun dealer obtain a background check and the approval of the CBI prior to transferring possession of a firearm. In 2000, a voter-approved initiative made it a class 1 misdemeanor for a gun show vendor to fail to obtain a background check and the approval of CBI prior to a firearms transfer. Since that time, zero individuals have been charged with this crime.

This fiscal note assumes that approximately 38 percent of total firearm transfers in Colorado occur between private individuals who are not subject to background check requirements under current law. The fiscal note assumes that 200,000 firearm transfers will occur in FY 2013-14 between private individuals. Although no gun show vendors have been charged with a class 1 misdemeanor for failure to conduct a background check as required by law, it is expected that at least 5 percent, or 10,000 private transactions will be conducted without a background check, and that 5 percent, or 500 of those transactions may be involved in law enforcement investigations. If those assumptions are correct, there is the potential for 1,000 new charges of class 1 misdemeanors (one charge for the person who transferred the firearm, and one charge for the person who received the firearm). However, it is likely that many of the individuals subject to this new charge would already be facing other charges.

## Local Government Impact

The new misdemeanor created by the bill will increase workload and expenditures in district attorneys' and county sheriffs' offices. The amount will vary by the jurisdiction and the number of cases. The penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. In addition, it is likely that some proportion of individuals charged with transferring or receiving a firearm in violation of the bill may be subject to other charges. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. It is assumed that the impact of this new misdemeanor will be minimal and will not create the need for additional county jail space, because the majority of offenders charged with the class 1 misdemeanor created by the bill would be facing other charges under current law, and would therefore already be likely to be imprisoned in a county jail for some length of time.

Page 6                                                           **HB13-1229**
March 1, 2013

## Departmental Differences

The Department of Public Safety estimated that it would need $306,000 in FY 2013-14 to modernize its information technology system by upgrading its website for firearms dealers, increasing security, and improving its ability to manage the queue of background checks. In addition, the department identified a need for annual maintenance costs for the system equal to 15 percent of the total cost, beginning in FY 2014-15. In total, the department estimated that the bill would require $1,834,294 General Fund and 24.7 FTE in FY 2013-14, and $1,580,525 General Fund and 26.3 FTE in FY 2014-15. Costs for upgrading the system were not included in the fiscal note because existing systems can be used to perform the background checks for private transactions and it is not clear that the update is required by the bill; it seems more likely that such a request would be addressed during the annual budget process.

## State Appropriations

For FY 2013-14, the Department of Public Safety requires an appropriation of $1,533,507 General Fund and 24.7 FTE. However, if House Bill 13-1228 becomes law, the Department of Public Safety requires an appropriation of $1,533,507 and 24.7 FTE from the Instant Criminal Background Check Cash Fund created by HB 13-1228. The bill contains provisions to address both of these possibilities.

## Departments Contacted

| | |
|---|---|
| Corrections | Counties |
| District Attorneys | Human Services |
| Judicial | Law |
| Local Affairs | Municipalities |
| Office of Information Technology | Public Safety |
| Sheriffs | |

5616

**HB13-1229**

*Colorado Legislative Council Staff Fiscal Note*
# STATE and LOCAL
# REVISED FISCAL IMPACT
(replaces fiscal note dated March 1, 2013)

| | |
|---|---|
| **Drafting Number:** LLS 13-0043 | **Date:** March 8, 2013 |
| **Prime Sponsor(s):** Rep. Fields; McCann | **Bill Status:** Senate Second Reading |
| Sen. Carroll | **Fiscal Analyst:** Hillary Smith (303-866-3277) |

**TITLE:** CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A FIREARM, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION.

| Fiscal Impact Summary | FY 2012-2013 | FY 2013-2014 | FY 2014-2015 |
|---|---|---|---|
| **State Revenue** Cash Funds    Fines Collection Cash Fund | | <$5,000 | <$5,000 |
| **State Transfers** Transfer from the General Fund to the: State Education Fund | | ($362,467) | |
| **State Expenditures** General Fund* | $362,467 | $1,415,932 | $1,529,033 |
| **FTE Position Change** | 4.0 FTE | 24.7 FTE | 26.3 FTE |
| **Effective Date:** Upon signature of the Governor, or upon becoming law without his signature. | | | |
| **Appropriation Summary for FY 2013-2014:** See State Appropriations section. | | | |
| **Local Government Impact:** See Local Government Impact section. | | | |

\* *If House Bill 13-1228 becomes law, any appropriations required for this bill would come from the Instant Criminal Background Check Cash Fund, although sufficient funds may not be available in this cash fund for a period of time.*

## Summary of Legislation

This bill, **as amended**, expands situations in which background checks are required prior to the transfer of a firearm and changes the process for reporting and updating the records on which background checks are based. The bill also creates a judicial process for petitioning for relief from federal firearms prohibitions pursuant to the federal National Instant Criminal Background Check System (NICS) Improvement Amendments Act of 2007. Further detail on these changes is provided below.

***Background check requirements.*** Current state and federal law requires a licensed gun dealer to obtain a background check prior to transferring possession of a firearm. State law also requires a gun show vendor to obtain a background check and the approval of the Colorado Bureau of Investigation (CBI) within the Department of Public Safety prior to transferring possession of a firearm. On and after July 1, 2013, this bill requires any person who is not a licensed gun dealer to

5617

**HB13-1229**

obtain a background check and the approval of the CBI prior to transferring possession of a firearm. If a firearm is transferred to a corporation, association, partnership, limited liability company, or trust, a background check is required to be conducted on all members of the entity.

Under the bill, individuals who are not licensed gun dealers must arrange for a licensed gun dealer to obtain the necessary background check. The dealer may charge a fee of up to $10 for this service. A person who transfers a firearm to an individual in violation of the bill may be liable for any civil damages proximately caused by that individual's subsequent use of the firearm. In addition, anyone who violates the background check requirements of the bill commits a class 1 misdemeanor and is prohibited from possessing a firearm for two years. The bill creates several exemptions to its requirements, including the transfer of an antique firearm, a transfer that is a gift between immediate family members, and certain temporary transfers.

*Court records.* Under current law, district and probate courts must report information to the NICS concerning individuals:

- whom the court has found to be incapacitated;
- who have been committed by the court to the Department of Human Services; and
- for whom the court has entered an order for involuntary certification for treatment of mental illness.

This bill requires district and probate courts to report such information to the CBI, rather than to the NICS maintained by the Federal Bureau of Investigation (FBI). The State Court Administrator must send the information electronically within 48 hours after receiving notification that an individual has been found incapacitated, has been committed, or has been involuntarily certified for treatment of mental illness. In addition, a court, upon becoming aware that such a record does not apply or no longer applies, must notify the Attorney General and update, correct, modify, or remove the record from any federal or state database.

*Petition for relief from federal firearms prohibitions.* The bill establishes a relief from disabilities program in accordance with the NICS Improvement Amendments Act of 2007. Under the bill, a person may petition for relief if, as a result of court action, he or she was: found incapacitated; committed to the Department of Human Services; or involuntarily certified for treatment for mental illness, and would be prohibited from shipping, transporting, possessing, or receiving a firearm by federal law. The bill specifies the procedures for a court proceeding concerning a petition for relief, and states that the court must consider the circumstances surrounding the firearms prohibitions, the petitioner's record, including mental health and criminal records, and the petitioner's reputation. Prior to granting relief, the court must find that the petitioner is not likely to act in a manner that is dangerous to public safety and granting relief is not contrary to the public interest. If a petition is denied, the petitioner may appeal to the Court of Appeals.

If the request for relief is granted, the adjudication or commitment that prevented the individual from buying or possessing a firearm is deemed not to have occurred for the purposes of the federal firearm prohibition. In addition, if a record of such an adjudication or commitment is removed by the FBI or by the state in order to update or correct the NICS database, the individual

# HB13-1229

concerned will also be granted relief from disabilities. Previously, any person who had been adjudicated as a mental defective or who had been committed to a mental institution was effectively banned from possessing a firearm for life under federal law.


## State Revenue

The bill may increase state revenue from fines, although less than $5,000 in new state revenue is expected per year. According to Section 18-1.3-501, C.R.S., the penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Fine revenue that is not otherwise appropriated is deposited into the Fines Collection Cash Fund. Because the courts have the discretion of incarceration, imposing a fine, or both, the impact to state revenue is expected to be minimal.


## State Transfers

House Bill 12-1338 transfers any General Fund surplus in FY 2012-13 to the State Education Fund. By increasing General Fund expenditures in FY 2012-13 by $362,467, this bill will reduce the amount transferred to the State Education Fund in FY 2013-14 by a corresponding amount.


## State Expenditures

***Department of Public Safety.*** This bill will increase state expenditures in the Department of Public Safety (DPS) by the amounts shown in Table 1. These costs would be paid from the General Fund and are described in greater detail below. Please note that because the bill requires more than 20 FTE, costs that are generally centrally appropriated are shown in Table 1 as well.

| Table 1. Expenditures Under HB13-1229 | | | |
|---|---|---|---|
| **Cost Components** | **FY 2012-13** | **FY 2013-14** | **FY 2014-15** |
| Personal Services | $172,454 | $989,072 | $1,143,371 |
| FTE | 4.0 | 24.7 | 26.3 |
| Operating Expenses and Capital Outlay | $121,533 | $22,054 | $24,985 |
| Information Technology Costs to allow data transfer from Judicial | $0 | $80,000 | $0 |
| Employee Insurance (Health, Life, Dental, and Short-term Disability) | $27,894 | $163,613 | $174,211 |
| Supplemental Employee Retirement Payments | $10,586 | $62,393 | $81,265 |
| Leased Space | $30,000 | $98,800 | $105,200 |
| **TOTAL** | **$362,467** | **$1,415,932** | **$1,529,033** |

Page 4                                                        **HB13-1229**
March 8, 2013

The need to process additional background checks will increase workload for the CBI within the Department of Public Safety. This fiscal note is based on the following assumptions:

- approximately 330,000 background checks will occur in FY 2013-14 under current law, and this number represents 62 percent of all gun transfers;
- approximately 200,000 background checks for private firearms transfers will occur in FY 2013-14;
- background checks for private firearms transfers will increase by 10 percent between FY 2013-14 and FY 2014-15, to a total of 220,000;
- the rate of transfer denials for private sales will be 5 percent, and 54 percent of those denied will appeal, resulting in 5,400 appeals in FY 2013-14 and 5,940 appeals in FY 2014-15; and
- this note only attempts to account for the growth in private gun transfers, because any increase in the number of transfers or appeals occurring under current law would be addressed during the annual budget process.

In addition, this fiscal note assumes that one technician can process 1,483 firearm transfer background checks per month, and that each appeal requires three hours of FTE time to research. Based on these assumptions, 19.0 additional technicians will be required as a result of the bill, and this increase in technicians will result in an estimated need for 5.7 FTE in supervisory and administrative staff, for a total FTE increase of 24.7 in FY 2013-14. The FTE need for the department will increase to 26.3 FTE in FY 2014-15 based on an estimated increase in private gun transfers and appeals, consisting of 20.4 technicians and 5.9 FTE in administrative and supervisory staff. As amended, the DPS will receive $362,467 General Fund and 4.0 FTE in FY 2012-13 in order to prepare for the anticipated workload increase on July 1, 2013. This amount includes $117,575 in one-time operating costs.

Finally, the bill requires the State Court Administrator to electronically send judicial orders of incapacitation, commitment, or involuntary certification for treatment of mental illness orders to the CBI within 48 hours of entry. This fiscal notes assumes that the Colorado Judicial Branch will load this data into the Colorado Integrated Crime Justice Information System (CICJIS) database and the DPS will extract the data through the Colorado Crime Information Center (CCIC) database, which is one of the databases checked during a background check. In order to accomplish this data transfer, the DPS requires up to $80,000 in one-time information technology costs to reprogram the CCIC in order to create new fields to hold the data from district and probate courts concerning mental-health-related orders and to update notification processes. These costs are estimated by the Computer Projects of Illinois, Inc., a third-party vendor responsible for programming changes to the CCIC.

*Judicial Branch.* Workload will increase for trial courts and the Court of Appeals due to the relief from disabilities program, the new cause of civil action, and the new misdemeanor created by the bill. This fiscal note assumes that the number of new petition, civil action, and criminal filings will be addressed within existing resources and will not require additional appropriations. The costs to update CICJIS database to reflect orders concerning incapacitation, commitment, or involuntary certification will not require additional appropriations.

**HB13-1229**

In addition, the Office of the State Public Defender and the Office of the Alternate Defense Counsel may be required to serve as defense counsel for individuals charged with the new misdemeanor created by the bill. However, this note assumes that many of those individuals would be facing other charges under current law, and any new clients can be served within existing appropriations.

## Comparable Crime

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1229 creates a new class 1 misdemeanor for failing to comply with the requirement that any person who is not a licensed gun dealer obtain a background check and the approval of the CBI prior to transferring possession of a firearm. In 2000, a voter-approved initiative made it a class 1 misdemeanor for a gun show vendor to fail to obtain a background check and the approval of CBI prior to a firearms transfer. Since that time, zero individuals have been charged with this crime.

This fiscal note assumes that approximately 38 percent of total firearm transfers in Colorado occur between private individuals who are not subject to background check requirements under current law. The fiscal note assumes that 200,000 firearm transfers will occur in FY 2013-14 between private individuals. Although no gun show vendors have been charged with a class 1 misdemeanor for failure to conduct a background check as required by law, it is expected that at least 5 percent, or 10,000 private transactions will be conducted without a background check, and that 5 percent, or 500 of those transactions may be involved in law enforcement investigations. If those assumptions are correct, there is the potential for 1,000 new charges of class 1 misdemeanors (one charge for the person who transferred the firearm, and one charge for the person who received the firearm). However, it is likely that many of the individuals subject to this new charge would already be facing other charges.

## Local Government Impact

The new misdemeanor created by the bill will increase workload and expenditures in district attorneys' and county sheriffs' offices. The amount will vary by the jurisdiction and the number of cases. The penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. In addition, it is likely that some proportion of individuals charged with transferring or receiving a firearm in violation of the bill may be subject to other charges. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. It is assumed that the impact of this new misdemeanor will be minimal and will not create the need for additional county jail space, because the majority of offenders charged with the class 1 misdemeanor created by the bill would be facing other charges under current law, and would therefore already be likely to be imprisoned in a county jail for some length of time.

Page 6                                                    **HB13-1229**
March 8, 2013

### Departmental Differences

The Department of Public Safety estimated that it would need $306,000 in FY 2013-14 to modernize its information technology system by upgrading its website for firearms dealers, increasing security, and improving its ability to manage the queue of background checks. In addition, the department identified a need for annual maintenance costs for the system equal to 15 percent of the total cost, beginning in FY 2014-15. In total, the department estimated that the bill would require $1,834,294 General Fund and 24.7 FTE in FY 2013-14, and $1,580,525 General Fund and 26.3 FTE in FY 2014-15. Costs for upgrading the system were not included in the fiscal note because existing systems can be used to perform the background checks for private transactions and it is not clear that the update is required by the bill; it seems more likely that such a request would be addressed during the annual budget process.

### State Appropriations

For FY 2012-13, the Department of Public Safety requires an appropriation of $362,467 General Fund and 4.0 FTE. For FY 2013-14, the Department of Public Safety requires an appropriation of $1,415,932 General Fund and 24.7 FTE. However, if House Bill 13-1228 becomes law, the Department of Public Safety requires an appropriation of $1,415,932 and 24.7 FTE from the Instant Criminal Background Check Cash Fund created by HB 13-1228. The bill contains provisions to address both of these possibilities.

### Departments Contacted

| | |
|---|---|
| Corrections | Counties |
| District Attorneys | Human Services |
| Judicial | Law |
| Local Affairs | Municipalities |
| Office of Information Technology | Public Safety |
| Sheriffs | |

**HB13-1229**

*Colorado Legislative Council Staff Fiscal Note*

# FINAL
# FISCAL NOTE

| | | | |
|---|---|---|---|
| **Drafting Number:** | LLS 13-0043 | **Date:** | July 22, 2013 |
| **Prime Sponsor(s):** | Rep. Fields; McCann | **Bill Status:** | Signed into Law |
| | Sen. Carroll | **Fiscal Analyst:** | Hillary Smith (303-866-3277) |

**TITLE:**    CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A FIREARM, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION.

| Fiscal Impact Summary | FY 2012-2013 | FY 2013-2014 | FY 2014-2015 |
|---|---|---|---|
| **State Revenue** <br> Cash Funds <br>     Fines Collection Cash Fund | | <$5,000 | <$5,000 |
| **State Transfers** <br> Transfer from the General Fund <br> to the:  State Education Fund | | ($362,467) | |
| **State Expenditures** <br> General Fund <br> Cash Funds <br>     Instant Criminal Background Check Cash Fund* | $362,467 | $1,415,932 | $1,529,166 |
| **FTE Position Change** | 4.0 FTE | 24.7 FTE | 26.3 FTE |
| **Effective Date:**  The bill was signed into law by the Governor and took effect March 20, 2013. | | | |
| **Appropriation Summary for FY 2013-2014:**  See State Appropriations section. | | | |
| **Local Government Impact:**  See Local Government Impact section. | | | |

*\* Sufficient funds may not be available in this cash fund for a period of time.*

## Summary of Legislation

This bill expands situations in which background checks are required prior to the transfer of a firearm and changes the process for reporting and updating the records on which background checks are based. The bill also creates a judicial process for petitioning for relief from federal firearms prohibitions pursuant to the federal National Instant Criminal Background Check System (NICS) Improvement Amendments Act of 2007. Further detail on these changes is provided below.

***Background check requirements.*** Current state and federal law requires a licensed gun dealer to obtain a background check prior to transferring possession of a firearm. State law also requires a gun show vendor to obtain a background check and the approval of the Colorado Bureau of Investigation (CBI) within the Department of Public Safety prior to transferring possession of a firearm. On and after July 1, 2013, this bill requires any person who is not a licensed gun dealer to

5623

Page 2                                                                                   **HB13-1229**
July 22, 2013

obtain a background check and the approval of the CBI prior to transferring possession of a firearm to a transferee. If a firearm is transferred to a corporation, association, partnership, limited liability company, or trust, a background check is required to be conducted on each natural person who is authorized by the transferee to possess the firearm before such natural person takes possession of the firearm.

Under the bill, individuals who are not licensed gun dealers must arrange for a licensed gun dealer to obtain the necessary background check. The dealer may charge a fee of up to $10 for this service. A person who transfers a firearm to an individual in violation of the bill may be liable for any civil damages proximately caused by that individual's subsequent use of the firearm. In addition, anyone who violates the background check requirements of the bill commits a class 1 misdemeanor and is prohibited from possessing a firearm for two years. The bill creates several exemptions to its requirements, including the transfer of an antique firearm, a transfer that is a gift or loan between immediate family members, and certain temporary transfers.

*Court records.* Under current law, district and probate courts must report information to the NICS concerning individuals:

- whom the court has found to be incapacitated;
- who have been committed by the court to the Department of Human Services; and
- for whom the court has entered an order for involuntary certification for treatment of mental illness.

This bill requires district and probate courts to report such information to the CBI, rather than to the NICS maintained by the Federal Bureau of Investigation (FBI). The State Court Administrator must send the information electronically within 48 hours after receiving notification that an individual has been found incapacitated, has been committed, or has been involuntarily certified for treatment of mental illness. In addition, a court, upon becoming aware that such a record does not apply or no longer applies, must notify the Attorney General and update, correct, modify, or remove the record from any federal or state database.

*Petition for relief from federal firearms prohibitions.* The bill establishes a relief from disabilities program in accordance with the NICS Improvement Amendments Act of 2007. Under the bill, a person may petition for relief if, as a result of court action, he or she was: found incapacitated; committed to the Department of Human Services; or involuntarily certified for treatment for mental illness, and would be prohibited from shipping, transporting, possessing, or receiving a firearm by federal law. The bill specifies the procedures for a court proceeding concerning a petition for relief, and states that the court must consider the circumstances surrounding the firearms prohibitions, the petitioner's record, including mental health and criminal records, and the petitioner's reputation. Prior to granting relief, the court must find that the petitioner is not likely to act in a manner that is dangerous to public safety and granting relief is not contrary to the public interest. If a petition is denied, the petitioner may appeal to the Court of Appeals.

**HB13-1229**

If the request for relief is granted, the adjudication or commitment that prevented the individual from buying or possessing a firearm is deemed not to have occurred for the purposes of the federal firearm prohibition. In addition, if a record of such an adjudication or commitment is removed by the FBI or by the state in order to update or correct the NICS database, the individual concerned will also be granted relief from disabilities. Previously, any person who had been adjudicated as a mental defective or who had been committed to a mental institution was effectively banned from possessing a firearm for life under federal law.

**State Revenue**

The bill may increase state revenue from fines, although less than $5,000 in new state revenue is expected per year. According to Section 18-1.3-501, C.R.S., the penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Fine revenue that is not otherwise appropriated is deposited into the Fines Collection Cash Fund. Because the courts have the discretion of incarceration, imposing a fine, or both, the impact to state revenue is expected to be minimal.

**State Transfers**

House Bill 12-1338 transfers any General Fund surplus in FY 2012-13 to the State Education Fund. By increasing General Fund expenditures in FY 2012-13 by $362,467, this bill will reduce the amount transferred to the State Education Fund in FY 2013-14 by a corresponding amount.

**State Expenditures**

*Department of Public Safety.* This bill will increase state expenditures in the Department of Public Safety (DPS) by the amounts shown in Table 1. FY 2012-13 costs would be paid from the General Fund, whereas the costs for FY 2013-14 and subsequent years would be paid from the Instant Criminal Background Check Cash Fund created by House Bill 13-1228. However, it should be noted that sufficient funds may not be available in the Instant Criminal Background Check Cash Fund for a period of time. The expenditures created by the bill are described in greater detail below. Please note that because the bill requires more than 20 FTE, costs that are generally centrally appropriated are shown in Table 1 as well.

**HB13-1229**

| Table 1. Expenditures Under HB13-1229 | | | |
|---|---|---|---|
| Cost Components | FY 2012-13 | FY 2013-14 | FY 2014-15 |
| Personal Services | $172,454 | $989,072 | $1,143,371 |
|    FTE | 4.0 | 24.7 | 26.3 |
| Operating Expenses and Capital Outlay | $121,533 | $22,054 | $24,985 |
| Information Technology Costs to allow data transfer from Judicial | $0 | $80,000 | $0 |
| Employee Insurance (Health, Life, Dental, and Short-term Disability) | $27,894 | $163,613 | $174,211 |
| Supplemental Employee Retirement Payments | $10,586 | $62,393 | $81,399 |
| Leased Space | $30,000 | $98,800 | $105,200 |
| **TOTAL** | **$362,467** | **$1,415,932** | **$1,529,166** |

The need to process additional background checks will increase workload for the CBI within the Department of Public Safety. This fiscal note is based on the following assumptions:

- approximately 330,000 background checks will occur in FY 2013-14 under current law, and this number represents 62 percent of all gun transfers;
- approximately 200,000 background checks for private firearms transfers will occur in FY 2013-14;
- background checks for private firearms transfers will increase by 10 percent between FY 2013-14 and FY 2014-15, to a total of 220,000;
- the rate of transfer denials for private sales will be 5 percent, and 54 percent of those denied will appeal, resulting in 5,400 appeals in FY 2013-14 and 5,940 appeals in FY 2014-15; and
- this note only attempts to account for the growth in private gun transfers, because any increase in the number of transfers or appeals occurring under current law would be addressed during the annual budget process.

In addition, this fiscal note assumes that one technician can process 1,483 firearm transfer background checks per month, and that each appeal requires three hours of FTE time to research. Based on these assumptions, 19.0 additional technicians will be required as a result of the bill, and this increase in technicians will result in an estimated need for 5.7 FTE in supervisory and administrative staff, for a total FTE increase of 24.7 in FY 2013-14. The FTE need for the department will increase to 26.3 FTE in FY 2014-15 based on an estimated increase in private gun transfers and appeals, consisting of 20.4 technicians and 5.9 FTE in administrative and supervisory staff. As amended, the DPS will receive $362,467 General Fund and 4.0 FTE in FY 2012-13 in order to prepare for the anticipated workload increase on July 1, 2013. This amount includes $117,575 in one-time operating costs.

**HB13-1229**

Finally, the bill requires the State Court Administrator to electronically send judicial orders of incapacitation, commitment, or involuntary certification for treatment of mental illness orders to the CBI within 48 hours of entry. This fiscal notes assumes that the Colorado Judicial Branch will load this data into the Colorado Integrated Crime Justice Information System (CICJIS) database and the DPS will extract the data through the Colorado Crime Information Center (CCIC) database, which is one of the databases checked during a background check. In order to accomplish this data transfer, the DPS requires up to $80,000 in one-time information technology costs to reprogram the CCIC in order to create new fields to hold the data from district and probate courts concerning mental-health-related orders and to update notification processes. These costs are estimated by the Computer Projects of Illinois, Inc., a third-party vendor responsible for programming changes to the CCIC.

*Judicial Branch.* Workload will increase for trial courts and the Court of Appeals due to the relief from disabilities program, the new cause of civil action, and the new misdemeanor created by the bill. This fiscal note assumes that the number of new petition, civil action, and criminal filings will be addressed within existing resources and will not require additional appropriations. The costs to update CICJIS database to reflect orders concerning incapacitation, commitment, or involuntary certification will not require additional appropriations.

In addition, the Office of the State Public Defender and the Office of the Alternate Defense Counsel may be required to serve as defense counsel for individuals charged with the new misdemeanor created by the bill. However, this note assumes that many of those individuals would be facing other charges under current law, and any new clients can be served within existing appropriations.

**Comparable Crime**

Pursuant to Section 2-2-322 (2.5), C.R.S., Legislative Council Staff is required to include certain information in the fiscal note for any bill that creates a new crime, changes the classification of an existing crime, or changes an element of the existing crime that creates a new factual basis for the offense. House Bill 13-1229 creates a new class 1 misdemeanor for failing to comply with the requirement that any person who is not a licensed gun dealer obtain a background check and the approval of the CBI prior to transferring possession of a firearm. In 2000, a voter-approved initiative made it a class 1 misdemeanor for a gun show vendor to fail to obtain a background check and the approval of CBI prior to a firearms transfer. Since that time, zero individuals have been charged with this crime.

This fiscal note assumes that approximately 38 percent of total firearm transfers in Colorado occur between private individuals who are not subject to background check requirements under current law. The fiscal note assumes that 200,000 firearm transfers will occur in FY 2013-14 between private individuals. Although no gun show vendors have been charged with a class 1 misdemeanor for failure to conduct a background check as required by law, it is expected that at least 5 percent, or 10,000 private transactions will be conducted without a background check, and that 5 percent, or 500 of those transactions may be involved in law enforcement investigations. If those assumptions are correct, there is the potential for 1,000 new charges of class 1 misdemeanors

Page 6
July 22, 2013

**HB13-1229**

(one charge for the person who transferred the firearm, and one charge for the person who received the firearm). However, it is likely that many of the individuals subject to this new charge would already be facing other charges.

**Local Government Impact**

The new misdemeanor created by the bill will increase workload and expenditures in district attorneys' and county sheriffs' offices. The amount will vary by the jurisdiction and the number of cases. The penalty for a class 1 misdemeanor is 6 to 18 months' imprisonment in a county jail, a fine of $500 to $5,000, or both. Because the courts have the discretion of incarceration or imposing a fine, the impact at the local level cannot be determined. In addition, it is likely that some proportion of individuals charged with transferring or receiving a firearm in violation of the bill may be subject to other charges. The cost to house an offender in county jails varies from $45 to $50 per day in smaller rural jails to $62 to $65 per day for larger Denver-metro area jails. It is assumed that the impact of this new misdemeanor will be minimal and will not create the need for additional county jail space, because the majority of offenders charged with the class 1 misdemeanor created by the bill would be facing other charges under current law, and would therefore already be likely to be imprisoned in a county jail for some length of time.

**Departmental Differences**

The Department of Public Safety estimated that it would need $306,000 in FY 2013-14 to modernize its information technology system by upgrading its website for firearms dealers, increasing security, and improving its ability to manage the queue of background checks. In addition, the department identified a need for annual maintenance costs for the system equal to 15 percent of the total cost, beginning in FY 2014-15. In total, the department estimated that the bill would require $1,834,294 General Fund and 24.7 FTE in FY 2013-14, and $1,580,648 General Fund and 26.3 FTE in FY 2014-15. Costs for upgrading the system were not included in the fiscal note because existing systems can be used to perform the background checks for private transactions and it is not clear that the update is required by the bill; it seems more likely that such a request would be addressed during the annual budget process.

**State Appropriations**

For FY 2012-13, the Department of Public Safety requires an appropriation of $362,467 General Fund and 4.0 FTE. For FY 2013-14, the Department of Public Safety requires an appropriation of $1,415,932 and 24.7 FTE from the Instant Criminal Background Check Cash Fund created by HB 13-1228.

**Departments Contacted**

| | | |
|---|---|---|
| Corrections | Counties | District Attorneys |
| Human Services | Judicial | Law |
| Local Affairs | Municipalities | Office of Information Technology |
| Public Safety | Sheriffs | |

HB13-1229

## REVISED* JBC STAFF FISCAL ANALYSIS
## HOUSE APPROPRIATIONS COMMITTEE

CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A
FIREARM.

| | |
|---|---|
| Prime Sponsors: Reps. Fields and McCann | JBC Analyst:   Viktor Bojilov |
|                  Senator Carroll | Phone:          303-866-2061 |
| | Date Prepared: February 13, 2013 |

### Fiscal Impact of Bill as Amended to Date

The most recent REVISED Legislative Council Staff Fiscal Note (attached) reflects the fiscal impact
of the bill as of 2/13/13.

**\* This REVISED JBC Staff Fiscal Analysis is written to the REVISED Legislative Council
Staff Note dated February 13, 2013.**

| XXX | No Change: Attached LCS Fiscal Note accurately reflects the fiscal impact of the bill |
|---|---|
| | **Update:** Fiscal impact has changed due to *new information or technical issues* |
| | **Update:** Fiscal impact has changed due to *amendment adopted* after LCS Fiscal Note was prepared |
| | **Non-Concurrence:** JBC Staff and Legislative Council Staff disagree about the fiscal impact of the bill |

### Amendments in This Packet for Consideration by Appropriations Committee

| Amendment | Description |
|---|---|
| J.003 | Staff-prepared appropriation amendment |

### Current Appropriations Clause in Bill
The bill requires but does not contain an appropriation clause.

### Description of Amendments in This Packet
**J.003**   Staff has prepared amendment **J.003** (attached) to add a provision appropriating $1,612,006
and 27.4 FTE.  The source of funds is dependent on whether H.B. 13-1228 is enacted.

If H.B. 13-1228 is not enacted, Section 9 of **J.003** appropriates $1,612,006 General Fund and
27.4 FTE for the costs of the bill.

If House Bill 13-1228 is enacted, it will create a cash fund source for the Instant Criminal
Background Check Program. Section 10 of **J.003** will take effect if H.B. 13-1228 is enacted
and appropriates $1,612,006 cash funds from the Instant Criminal Background Check Cash
Fund and 27.4 FTE for the costs of the bill.

Section 11 of **J.003** amends the effective date clause.

JBC Staff Fiscal Analysis 1

EXHIBIT

/47

5629

**HB13-1229**                                                    **JBC Staff Analysis**

**Points to Consider**

*Technical Issue*
The appropriation clause totals $1,612,006 and is written to Table 1 of the REVISED Legislative Council Staff Fiscal Note dated February 13, 2013. The amount in the summary table on page 1 of the Revised Fiscal Note and the amount on Table 1 on page 3 differ by $1.0 due to a rounding error.

HB13-1229

# JBC STAFF FISCAL ANALYSIS
## SENATE APPROPRIATIONS COMMITTEE

CONCERNING CRIMINAL BACKGROUND CHECKS PERFORMED PURSUANT TO THE TRANSFER OF A
FIREARM, AND, IN CONNECTION THEREWITH, MAKING AN APPROPRIATION.

| | |
|---|---|
| Prime Sponsors: Reps. Fields and McCann | JBC Analyst: Viktor Bojilov |
| Senator Carroll | Phone: 303-866-2061 |
| | Date Prepared: March 5, 2013 |

### Fiscal Impact of Bill as Amended to Date

The most recent Legislative Council Staff Revised Fiscal Note (attached) reflects the fiscal impact
of the bill as of 03/01/13.

| XXX | **No Change:** Attached LCS Fiscal Note accurately reflects the fiscal impact of the bill |
|---|---|
| | **Update:** Fiscal impact has changed due to *new information or technical issues* |
| | **Update:** Fiscal impact has changed due to *amendment adopted* after LCS Fiscal Note was prepared |
| | **Non-Concurrence:** JBC Staff and Legislative Council Staff disagree about the fiscal impact of the bill |

The Senate State, Veterans, and Military Affairs Committee Report (03/04/13) includes amendments
to the bill, however, Legislative Council Staff and JBC Staff agree that the committee amendments
do not change the fiscal impact of the bill.

### Amendments in This Packet for Consideration by Appropriations Committee

| Amendment | Description |
|---|---|
| J.005 | Staff-prepared appropriation amendment |

**Current Appropriations Clause in Bill**

The bill includes an appropriations clause that appropriates $1,612,006 and 27.4 FTE to the
Department of Public Safety for FY 2013-14. The source of funds is dependent on whether H.B. 13-
1228 is enacted.

If H.B. 13-1228 is not enacted, **Section 9** of the bill appropriates $1,612,006 General Fund and 27.4
FTE for the costs of the bill. If H.B. 13-1228 is enacted, it will create a cash fund source for the
Instant Criminal Background Check Program. **Section 10** of the bill will take effect if H.B. 13-1228
is enacted and appropriates $1,612,006 cash funds from the Instant Criminal Background Check
Cash Fund and 27.4 FTE for the costs of the bill.

The current appropriations clause does not match the Revised Legislative Council Staff Fiscal Note
as of 03/01/13. Staff has prepared amendment **J.005** (attached) to add a provision appropriating

JBC Staff Fiscal Analysis 1

**HB13-1229**                                                    **JBC Staff Analysis**

$1,533,507 and 24.7 FTE to the Department of Public Safety for FY 2013-14. Similar to the existing appropriations clause, the source of funds is contingent on whether H.B. 13-1228 is enacted.

## Points to Consider

*General Fund Impact*

The general appropriations bill for FY 2013-14 has not yet been introduced. This bill requires a General Fund appropriation of $1,533,507 for FY 2013-14, reducing the amount of General Fund available for other existing programs. [If H.B. 13-1228 is enacted, this appropriation would come from cash funds.]